# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNA VARGAS, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | Docket No. 1:16:CV-01657-YK |
| | : | (Judge Kane) |
| PENN STATE HERSHEY | : | (Electronically Filed) |
| MILTON S. HERSHEY | : | |
| MEDICAL CENTER, | : | |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS PURSUANT TO F.R.C.P. 56

# **TABLE OF CONTENTS**

I. PROCEDURAL HISTORY ......................................................... 1

II. STATEMENT OF FACTS ........................................................... 3

III. STATEMENT OF QUESTION INVOLVED .............................. 3

IV. ARGUMENT ................................................................................. 3

    A.    Summary Judgment Standard .......................................... 4

    B.    Negligent Infliction of Emotional Distress Claims, as Applicable Here, Require Observation of the Defendant Traumatically Inflicting Harm on the Plaintiff's Relative, with No Buffer of Time or Space ............................................... 6

    C.    The Plaintiff Cannot Establish the Observation Requirements Necessary for a Prima Facie Case ................ 11

V. CONCLUSION ........................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986)....5
Celotex Corp v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986).............. 4, 6
Halliday v. Beltz, 514 A.2d 906, 908 (Pa. Super. 1986) ..........................9
Jones v. United Parcel Service, 214 F.3d 402 (3rd Cir. 2000)..................4
Love v. Cramer, 606 A.2d 1175 (Pa. Super. 1992)............................ 10, 11
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,
   106 S.Ct. 1348 (1986) .................................................................5
Mazzagatti v. Everingham, 516 A.2d 672 (Pa. 1986) ..............................8
Niederman v. Brodsky, 261 A.2d. 84 (Pa. 1970).......................................7
Sinn v. Burd, 404 A.2d 672 (Pa. 1979)......................................................7
Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202 (Pa. Super. 2012).......7
Williams v. Borough of West Chester, 891 F.2d 458 (3rd Cir. 1989).......6

**Rules**
F.R.C.P. 56(c).............................................................................................4

I. **PROCEDURAL HISTORY**

Plaintiff initiated the instant medical professional liability action by filing a Complaint in the United States District Court for the Middle District of Pennsylvania on August 10, 2016. (Doc. 1, Complaint.) Within the Complaint, the Plaintiff has alleged claims on behalf of her deceased husband, Justino Vargas, and in her own right related to an evaluation and diagnosis of the cause of Mr. Vargas's acute rectal bleeding in December 2014. In short, the Plaintiff claims that Penn State Milton S. Hershey Medical Center ("Medical Center") staff negligently discharged Mr. Vargas from the hospital prematurely on December 3, 2014, that Mr. Vargas boarded an airplane later that day with Mrs. Vargas, and that Mr. Vargas suffered an episode of recurrent bleeding during the flight. (See, generally, Doc. 1, Compl.) Mr. Vargas's recurrent bleeding ultimately led to his demise.

Within her Complaint, Mrs. Vargas alleges claims of negligence on behalf of Mr. Vargas and his estate under the Pennsylvania Wrongful Death Act and Survival Act. (See, Doc. 1, Compl., ¶¶ 33-39.)

Mrs. Vargas also alleges claims in her own right, however, based on a negligent infliction of emotional distress. (See, Doc. 1, Compl, ¶¶

1

94-99[1].)  Mrs. Vargas alleges that she was "acutely aware of the mismanagement and negligent discharge of her husband, Justino Vargas, and further witnessed to her extreme horror, her husband bleed to death while trapped in an airliner."  (Id., ¶ 95.)  She further alleges that she experienced "direct sensory and contemporaneous observation" of negligent acts concerning the management of Mr. Vargas's bleeding; his negligent discharge from the Medical Center; his acute recurrence of the bleeding; being unable to obtain medical care; and his condition and unsuccessful resuscitation.  (Id., ¶ 96(a) – (e).)

The parties have engaged in discovery and discovery is now closed pursuant to this Honorable Court's Order dated September 29, 2017.  (Doc. 26.)  Mrs. Vargas testified at a pretrial deposition on June 7, 2017 during the course of discovery; a copy of that deposition is attached as Exhibit B to the Medical Center's Statement of Material Facts.

All discovery relevant to this Motion for Summary Judgment has been completed.  The Medical Center now files the accompaning Motion for Partial Summary Judgment pursuant to this Court's September 29, 2017 Order to obtain summary judgment due to the Plaintiff's inability

---

[1] The Plaintiff's Complaint transitions from paragraph number 39 to paragraph number 94, with no paragraphs numbered 40 through 93.

to meet her burden of proof as to her claims of negligent infliction of emotional distress.

## II. STATEMENT OF FACTS

The Medical Center incorporates by reference the Statement of Material Facts (SMF) filed with its Motion for Partial Summary Judgment.

## III. STATEMENT OF QUESTION INVOLVED

A. Whether Defendant is entitled to judgment as a matter of law as to the Plaintiff's claims of negligent infliction of emotional distress when Plaintiff cannot establish that she observed Defendant's staff traumatically inflicting harm on the decedent as required by Pennsylvania law?

(Suggested Answer: Yes.)

## IV. ARGUMENT

The Plaintiff undoubtedly suffered a harrowing experience on December 3, 2014, when her husband suffered a recurrence of his rectal bleeding mid-flight while they were en route home from Pennsylvania. Distressing though this may have been, the law limits those circumstances under which individuals may independently recover for

emotional distress. As applicable here, the law requires that a plaintiff's emotional distress arise from having "observed the defendant traumatically inflicting the harm on the plaintiff's relative, with no buffer of time or space to soften the blow." Bloom v. Dubois Regional Med. Ctr., 597 A.2d 671, 682 (Pa. Super. 1990). The facts as demonstrated by discovery in this case, however, demonstrate that Mrs. Vargas never observed any such conduct. She will, therefore, be unable to meet her burden of proof as to her own independent claim for negligent infliction of emotional distress. This Court should, therefore, enter summary judgment in favor of the Medical Center as to that claim.

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Jones v. United Parcel Service, 214 F.3d 402, 405 (3rd Cir. 2000). A fact is "material" if, under the governing law of

the case, it is outcome-determinative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

In considering a defendant's motion for summary judgment, the evidence must be viewed in the light most favorable to the plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). Within this context, summary judgment must be entered for the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. (citations omitted).

When a defendant has submitted a properly supported summary judgment motion, the plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356 (citations omitted). To defeat a properly supported motion for summary judgment, a plaintiff "must present *affirmative evidence*," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." Williams v.

5

Borough of West Chester, 891 F.2d 458, 460 (3rd Cir. 1989) (citations omitted).

The Supreme Court has specifically held that Rule 56 must be construed to preserve a defendant's, as well as the plaintiff's, rights. Thus:

> …[T]he plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.' <u>The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.</u>

Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552 (emphasis added).

**B. <u>Negligent Infliction of Emotional Distress Claims, as Applicable Here, Require Observation of the Defendant Traumatically Inflicting Harm on the Plaintiff's Relative, with No Buffer of Time or Space</u>**

Pennsylvania appellate Courts have limited negligent infliction of emotional distress claims to four factual situations giving rise to such distress:

Borough of West Chester, 891 F.2d 458, 460 (3rd Cir. 1989) (citations omitted).

The Supreme Court has specifically held that Rule 56 must be construed to preserve a defendant's, as well as the plaintiff's, rights. Thus:

> …[T]he plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.' <u>The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.</u>

Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552 (emphasis added).

**B. <u>Negligent Infliction of Emotional Distress Claims, as Applicable Here, Require Observation of the Defendant Traumatically Inflicting Harm on the Plaintiff's Relative, with No Buffer of Time or Space</u>**

Pennsylvania appellate Courts have limited negligent infliction of emotional distress claims to four factual situations giving rise to such distress:

      (1)    The defendant had a contractual or fiduciary duty toward the plaintiff;
      (2)    The plaintiff was subjected to a physical impact;
      (3)    The plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or
      (4)    The plaintiff observed a tortious injury to a close relative.

See, e.g., Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202 (Pa. Super. 2012). The only theory applicable in this case is the theory relating to the observation of a tortious injury to a close relative, which the Pennsylvania Supreme Court first established in Sinn v. Burd, 404 A.2d 672 (Pa. 1979).

    Sinn represented a departure from an existing line of Pennsylvania cases that circumscribed emotional distress claims by requiring that individuals bringing those claims be within the "zone of danger" created by the defendant's negligence. Under that prior rule, plaintiffs were limited in recovering solely for emotional distress arising because of a defendant's conduct to situations where they were in jeopardy of physical impact from the negligent act and feared that such an impact would result. See, Niederman v. Brodsky, 261 A.2d. 84 (Pa. 1970). The Sinn Court found the "zone of danger" rule an unworkable

7

means to limit emotional distress claims and developed criteria rooted in the plaintiff's contemporaneous observation of negligent conduct.

The Pennsylvania Supreme Court further refined the observation requirement when it rejected claims of emotional distress brought by the mother of a child fatally injured in a car accident. See, Mazzagatti v. Everingham, 516 A.2d 672 (Pa. 1986). In Mazzagatti, the Court held that the driver of the vehicle did not owe the mother a duty of care to protect her against the emotional distress she suffered when she subsequently arrived at the accident scene and saw her fatally injured daughter. Id. at 678-679. The Court focused on the contemporaneous observation of a negligent act resulting in a traumatic event and held that "the critical element for establishing [emotional distress] liability is the contemporaneous observance of the injury to the close relative." Id., at 679.

Pennsylvania appellate courts have subsequently consistently required that a plaintiff seeking damages solely for emotional distress arising from injuries to a close family member prove that they directly and contemporaneously witnessed the tortious conduct, not just its aftermath. For instance, the Pennsylvania Superior Court affirmed the

8

dismissal of negligent infliction of emotional distress claims due to the inability to prove "'sensory and contemporaneous observance of the accident' or the personal observation requirements of Pennsylvania case law" in a case involving complications that arose in the operating room leading to a patient's death.  See, Halliday v. Beltz, 514 A.2d 906, 908 (Pa. Super. 1986).  The patient's family, in Halliday, was in the operative waiting area and therefore could not meet their burden of proving that they observed the defendant inflicting injury.

Within another tragic case, the Pennsylvania Superior Court rejected emotional distress claims on behalf of a husband who found his wife after she hanged herself in a suicide attempt while admitted to a psychiatric unit.  See, Bloom v. Dubois Regional Med. Ctr., 597 A.2d 671 (Pa. 1990).  There, the Court stated:

> The Court's intent has clearly been to limit recovery for negligent infliction of emotional distress to those situations where the plaintiff suffers a direct harm of his or her own as a result of the defendant's conduct, and to find that this harm has been experienced only where the plaintiff has been directly and traumatically impacted by the defendant's tortious conduct.  **To recover the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiff's relative, with no buffer of time or space to soften the blow.**

9

Bloom, 597 A.2d at 682 (emphasis added).  Particularly notable from the Bloom Court's opinion because it is directly applicable to this case is the Court's following observation:

> …we conclude that to allow recovery [for emotional distress] here would be to go beyond the parameters of liability that have been established both by the Supreme Court and this court.  Mr. Bloom observed his wife in the aftermath of her own suicide attempt.  He did not, however, observe any traumatic infliction of injury on his wife at the hands of the defendants because none occurred.  The alleged negligence of defendants here is an omission and involved no direct and traumatic infliction of injury on Mrs. Bloom by the defendants.  Under these circumstances, we find that Mr. Bloom has not sufficiently pleaded a cause of action for negligent infliction of emotional distress since he has not pleaded the element of contemporaneous observance of traumatic infliction of injury by defendants."

Id. at 683.

Bloom expressly left open the possibility that emotional distress claims could arise from an alleged failure to act, in which it is impossible to observe a discreet negligent act.  See, id. at 683.  Just such a case came about in Love v. Cramer, 606 A.2d 1175 (Pa. Super. 1992).  In Love, the Superior Court reinstated the plaintiff's negligent infliction of emotional distress claim when the plaintiff observed "the lack of medical care" and her mother's subsequent heart attack.  Id. at 1178-1179.

10

Love, however, is much different from this case.  In Love, the plaintiff researched her mother's medical problems and learned that they were attributable to a heart condition.  Id. at 1176.  The plaintiff, therefore, took her mother to the defendant, who opted not to perform additional testing or treatment.  Id.  The plaintiff and her mother subsequently saw the defendant repeatedly over the next six weeks, but the defendant continued to not investigate the possibility of a heart condition.  Id.  Ultimately, the plaintiff's mother died of heart failure with the plaintiff at her side and witnessing her death.  Id.  Consequently, Love involved an affirmative refusal to treat rather than a clear plan of care, performance of diagnostic interventions, and a diagnosis that the Plaintiff in this action claims was incorrect.

## C. The Plaintiff Cannot Establish the Observation Requirements Necessary for a Prima Facie Case

Two hours after Mr. Vargas's rectal bleeding began, Mrs. Vargas and her family called an ambulance.  (SMF, ¶ 3, 5.)  She and her son had to help Mr. Vargas off the toilet and Mrs. Vargas saw a large amount of bright red blood in the toilet bowl.  (Id., ¶ 4.)  After Mr. Vargas's arrival at the Medical Center, Mrs. Vargas watched as Medical

11

Center ED and Internal Medicine staff aggressively resuscitated him. (Id., ¶ 7.)

To evaluate the cause of Mr. Vargas's rectal bleeding, members of the GI service ordered an endoscopy and colonoscopy. (Id., ¶ 8.) Before those procedures were performed, the GI staff's differential diagnosis included a bleeding diverticula in Mr. Vargas's colon or peptic ulcer disease in view of the fact that Mr. Vargas had recently started high dose NSAID treatment. (Id.)

Mr. Vargas promptly underwent both an upper endoscopy and colonoscopy on December 2, the same day that he arrived at the hospital. (Id., ¶ 9.) Mrs. Vargas was not present for either of those procedures but learned afterwards that the GI staff believed her husband's bleeding arose from stomach ulcers. (Id., ¶¶ 10, 11.) After learning this information, Mrs. Vargas left the hospital. (Id., ¶ 12.)

Mrs. Vargas only returned to the hospital the following day, after hospital staff decided that Mr. Vargas was ready for discharge. (Id., ¶¶13, 14.) Mrs. Vargas did not participate in any discussions with physician staff on December 3, the day Mr. Vargas was discharged, nor

was she involved in any discussions about the decision to discharge her husband that day. (Id., ¶ 16.)

After picking up her husband from the hospital, Mrs. Vargas believed that his condition was good. (Id., ¶ 18.) In fact, before boarding their flight, Mr. and Mrs. Vargas went to lunch with a family friend before he dropped them off at the airport. (Id., ¶ 19.)

The facts of this case as developed in discovery demonstrate that Mrs. Vargas never observed Medical Center staff engaged in negligent conduct traumatically inflicting harm upon her husband. In fact, although the defense disputes the Plaintiff's claims of negligence, her claims relate to a failure to arrive at an appropriate diagnosis, which is an act of omission similar to the conduct in <u>Bloom</u>, <u>supra</u>, deemed to be insufficient to state an emotional distress claim. Certainly the Plaintiff never knew or suspected that her husband's proffered diagnosis was incorrect.

The facts of this case are quite unlike <u>Love</u>, where the Pennsylvania Superior Court allowed an emotional distress claim to proceed under negligent conduct arising from acts of omission. In <u>Love</u>, the plaintiff researched the decedent's medical condition, suspected it

13

was related to her heart, repeatedly took her to the defendant-physician for evaluation and treatment and raised the possibility of a problem with her mother's heart.  While in those circumstances involving the lack of medical care the Court found the plaintiff contemporaneously observed the tortious conduct, this case by contrast involves a thorough workup and performance of prompt diagnostic studies on Mr. Vargas including a CT scan, colonoscopy, and upper GI endoscopy before concluding that he was at a low risk for re-bleed.  (SMF, ¶¶6 – 9.)  Although Mrs. Vargas alleges that Medical Center staff "failed to recognize the failure of either the upper GI or colonoscopy to identify a bleeding source," (Doc. 1, Compl., ¶ 29), she never recognized a failure to act on the part of Medical Center providers at any point during her husband's hospital admission.  Despite feeling as though she could ask questions at the time, Plaintiff's only question after her husband's procedures was whether she could see him.  (SMF, ¶ 12.)  There is nothing within Plaintiff's deposition testimony that demonstrates this case is anything like <u>Love</u>.

## V. <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully requests that this Honorable Court grant its Motion for Summary Judgment with respect to Plaintiff's claim for negligent infliction of emotional distress.

                      Respectfully submitted,

                      McQUAIDE BLASKO, INC.

Dated: February 20, 2018　　　　/s Jonathan B. Stepanian
　　　　　　　　　　　　　　　　Jonathan B. Stepanian, Esquire
　　　　　　　　　　　　　　　　PA #89147
　　　　　　　　　　　　　　　　1249 Cocoa Ave., Suite 210
　　　　　　　　　　　　　　　　Hershey, PA  17033
　　　　　　　　　　　　　　　　(717) 533-4444
　　　　　　　　　　　　　　　　jbstepanian@mqblaw.com
　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　Penn State Hershey Milton S.
　　　　　　　　　　　　　　　　Hershey Medical Center