# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JoAnna Vargas, as Executrix of the Estate of Justino Vargas, and in her own right : : : : Plaintiff, : v. : : Penn State Hershey Milton S. Hershey Medical Center : : Defendant. : | CIVIL ACTION NO.: 1:16-cv-01657-YK JURY TRIAL DEMANDED |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.  STATEMENT OF FACTS

This is a medical professional liability action in which the plaintiff has alleged claims for negligence and Negligent Infliction of Emotional Distress. Plaintiff alleged, *inter alia,* as follows: on 2 December, 2014, Plaintiff's decedent Justino Vargas, along with his wife, JoAnna Vargas, presented to the Hershey Medical Center with a massive gastrointestinal bleed. The bleed was so significant that he required admission to the intensive care unit. Within less than two days, Mr. Vargas was discharged, with the defendant's health care personnel failing to find a source of the bleed, and knowing that Mr. and Mrs. Vargas were about to embark on a flight from Pennsylvania to Florida. Regrettably, Mr. Vargas suffered another critical GI bleed while in the skies over North Carolina, and effectively bled to death in front of his wife. In addition to the Wrongful Death and Survival Act claims, Mrs. Vargas claims damages for the defendant's Negligent Infliction of Emotional Distress.

Plaintiffs' medical experts supported their claims for negligence. Exhibit "C" is the preliminary and supplemental reports of Neil Julie, M.D., who describes not only the negligent discharge, but the failure of the defendant's health care personnel to consider or provide any warnings regarding the effects of altitude on the bowel, particularly when there was a recent, critical GI bleed.

These negligent acts and omissions also inflicted severe emotional distress on the Mrs. Vargas. The defendant's personnel only informed Mrs. Vargas that the bleeding was from the stomach, never warned of any risks or rebleeding while on board an airliner, or that Mr. Vargas may die in front of Mrs. Vargas if he suffered another, critical GI bleed while trapped on an airliner.

## II.     STATEMENT OF THE QUESTION

Is the defendant entitled to summary judgment on the plaintiff's claims for Negligent Infliction of Emotional Distress, where the evidence supports the claims on multiple grounds – ignored by the defendant?

Suggested answer: No.

## III.    ARGUMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is material where it "might affect the outcome of the suit under the governing law…" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is genuine

where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party opposing summary judgment may not rest upon the mere allegations of the pleadings, but must set forth facts showing there is a genuine issue for trial. F.R.Civ.P. 56(e). "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989).

The facts must be viewed in the light most favorable to the party opposing summary judgment and all inferences must be resolved in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007); Int'l. Raw Materials, Inc. v. Stauffer Chem Co., 898 F.2d 946, 949 (3d Cir. 1990). The court may not make credibility determinations or weigh the evidence; these are jury functions. Liberty Lobby, 477 U.S. at 254 and 255. Thus, although the court should view the record as a whole, it must disregard all evidence favorable to the moving party the jury is not required to believe. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000).

### B.   Elements of a Cause of Action for Negligent Infliction of Emotional Distress

A cause of action for Negligent Infliction of Emotional Distress has been recognized where (1) the defendant owed plaintiff a pre-existing duty based upon a special or contractual relationship, such as the doctor-patient relationship here; (2) plaintiff was subjected to a physical impact; (3) plaintiff was in a zone of danger, thereby reasonably experiencing fear of a physical impact; or (4) plaintiff observed a tortious

injury to a close relative or herself.  Toney v. Chester Co. Hosp., 961 A.2d 192, 297-98 (Pa. Super. 2008), aff'd., 36 A.3d 83 (Pa. 2011).

### C. Plaintiffs Have a Cause of Action for Negligent Infliction of Emotional Distress Under the "Special Relationship" Theory, and Defendants Do Not and Cannot Argue Otherwise

This is not merely a case of "bystander liability," as defendants falsely pretend. Plaintiff JoAnna Vargas was in a "special relationship" with the defendant.  Toney, Turner, Sinn.

As written in Plaintiff's Answer to the Defendant's Motion, for some reason the defense has failed to reference in any way the Toney case.  This critical legal omission is important, because, just as a special relationship between husband and wife is well established an a duty is formed (Turner, Sinn), the Pennsylvania Supreme Court, in holding that another special relationship exists between mother and obstetrician, held that

> ... Defendants did owe Plaintiff an implied duty to care for her emotional well-being, and that it was foreseeable that a breach of this duty could result in severe emotional disturbance causing physical injuries to Plaintiff.  Here, Defendants were performing a medical procedure in a **sensitive area of practice fraught with emotions of expectant parents**.

Toney, 36 A.3d p. 99.  (Emphases supplied.)  The plaintiff in that case "alleged that Defendants breached their duty by failing to interpret her ultrasound properly," which denied her the opportunity to prepare herself for the later shock of giving birth to a child with profound abnormalities.  Toney, 36 A.3d p. 95.

This case, too, involves a very sensitive issue of a husband and wife, and a critical and life threatening bleed.   The Defendant's personnel were charged with diagnosing, treating and properly advising of the risks emanating from a critical GI bleed, including

4

the risks of re-bleeding while on a long flight from Pennsylvania to Florida. As such, they owed Plaintiff an implied duty to care for her emotional well-being. Their breach of this duty resulted in severe emotional disturbance causing physical injuries to Plaintiff.

The defendant's personnel breached their duty by failing to properly diagnose the source of the critical GI bleed, prematurely discharging one day after admission, and then knowingly permitting Mr. & Mrs. Vargas to embark on an airline flight from Pennsylvania to Florida within twenty four hours of receiving a colonoscopy and hospital discharge. See exhibit "C."

Mrs. Vargas suffered severe emotional distress resulting in physical harm. In pages of her deposition mostly excluded from the defendant's Motion[3], she testified about the awful pain and terror she suffered as a result of the defendants' negligence, her overwhelming anxiety and distress as to the possible effects on her babies and the physical harm it produced:

```
                74
12  Q.    You went to the hospital that he was
13  taken to?
14  A.    Yes.
15  Q.    I think I had read that you went in a
16  separate ambulance?
17  A.    Yes.  I started -- I started feeling my
18  chest hurting.  And I told them I -- I have two
19  stents in my heart.  And I started feeling that
20  sensation, so I just asked them for a little
21  nitro.  I find it funny now because I'm like what
22  are you kidding.  Of course everything --
23  everybody jumped up and said what, you know, you
24  need what.  And they said get another ambulance.
                75
 1  So they threw me in there and started feeding me
 2  nitro until the pain stopped.
 3  Q.    You were okay ultimately?
```

---

[3] The defendant only include page 76 of this exchange in their Motion, leaving out the fact that Mrs. Vargas also suffered chest pain and was hospitalized as a direct result of watching her husband bleed to death in the airplane.

5

 4  A.    Ultimately, yes.
 5  Q.    Medically?
 6  A.    Yes.
 7  Q.    What -- what happened then?  Just tell
 8  me briefly what happened in the hospital?
 9  A.    I found myself being wheeled in.  I
10  passed these curtains.  And they said your husband
11  is in there.  They're trying to do what they can
12  for him.  And I started to cry out to him and tell
13  him I was there because they didn't bring me near
14  him.  They put me somewhere else.  It's like
15  another curtain over.  But I kept calling out.
16  They didn't like that but that's what I did.
17  Honey, I'm -- I'm here.  Open your eyes and --
18  Q.    Did you -- your husband unfortunately
19  couldn't be resuscitated there.  Did you -- did
20  you talk with the hospital staff about why it had
21  happened?
22  A.    All -- all I remember is they came -- my
23  bars were up.
24  Q.    You were in a hospital bed?
                76
 1  A.    I was in a hospital bed, yes.
 2  My bars were up.  And I was taken to another room,
 3  another area with a curtain.  And so I don't know
 4  how long that was either.  But someone came by my
 5  side there and said -- I thought she was going to
 6  tell me that -- you know, she -- she started off,
 7  like he lost a lot of blood but then at the end
 8  she said, well, we couldn't bring him back.  I
 9  thought she was going to say but, you know, we got
10  him or something.  But that was like not what I
11  heard.  I was looking for that.  And she said
12  we -- we couldn't -- we couldn't do anything for
13  him.  He's gone.  And at that moment my son -- one
14  of my sons was on the phone with me and he heard
15  her.
16  Q.    Which -- which son was that?
17  A.    That was Adam.
18  Q.    At any point while you were there at the
19  hospital -- how long were you at the hospital, by
20  the way?
21  A.    I was there until the next day.
22  Q.    Were you admitted yourself to the
23  hospital?
24  A.    Yes, yes.

See pp. 74:12-76:24 of Mrs. Vargas' deposition, attached as Exhibit "B" hereto. (Emphases supplied.)

The evidence is thus sufficient to support a claim for Negligent Infliction of Emotional Distress under the "special relationship" theory. Indeed, defendants do not and cannot contend otherwise. Rather than attempt to dispute that they stood in a special relationship to plaintiff JoAnna Vargas, they ignore this basis for a cause of action for negligent infliction emotional distress. That is because they cannot deny that she has a claim under the "special relationship" theory.

### D. Plaintiffs Have a Cause of Action for Negligent Infliction of Emotional Distress Under the "Bystander" Theory

Lastly, plaintiff has a claim under the "bystander rule." As originally stated, a claim under this rule is contingent upon whether (a) the plaintiff was located near the scene of the trauma, rather than a distance away from it; (b) the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observation of the trauma, rather than learning about it second-hand after the occurrence[4]; and (c) the plaintiff and the victim were closely related, as opposed to the absence of a relationship or the presence of only a distant relationship. Sinn v. Burd, 404 A.2d 672, 685 (Pa. 1979).

Defendant cannot dispute that JoAnna Vargas was at the scene of the trauma and suffered immediate harm. They merely assert that Mrs. Vargas did not observe the

---

[4] However, Pennsylvania courts have since allowed recovery where the plaintiff did not witness the traumatic event. For example, the Superior Court upheld an award for emotional distress to the estate of a mother who heard "a commotion" and "ran to the scene, only to see her children horribly injured in the accident." Krysmalski v. Tarasovich, 622 A.2d 298 (Pa. Super. 1993), appeal denied, 636 A.2d 634 (Pa. 1993).

colonoscopy and ignore all the other negligent acts and omissions the plaintiff did contemporaneously observe and the resultant trauma she suffered.

JoAnna Vargas was present and part of the discharge planning, the defendant's negligent conclusion that this critical GI bleed was from the stomach, when the fact was that they had not found a source of the bleed, and was also negligently instructed that it was fine for Mr. & Mrs. Vargas to embark on a flight from Pennsylvania to Florida so soon after a critical GI bleed, colonoscopy and rapid discharge. Regrettably, the facts and circumstances of this tragic case require that a jury determine whether Mrs. Vargas has suffered Negligent Infliction of Emotional Distress, and if so, determine the amount of compensation to her.

## IV   CONCLUSION

**WHEREFORE,** it is respectfully requested that Defendant's Motion for Partial Summary Judgment be DENIED.

Respectfully submitted,

**THE BEASLEY FIRM, LLC**

/s/James E. Beasley, Jr.
JAMES E. BEASLEY, JR.
PA Attorney I.D. No. 83282
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
215.931.2689
215.592.8360 (telefax)
jim.beasley@beasleyfirm.com

Dated: 9 March 2018            Attorneys for Plaintiff