# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNA VARGAS, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | Docket No.  1:16:CV-01657-YK |
| | : | (Judge Kane) |
| PENN STATE HERSHEY | : | (Electronically Filed) |
| MILTON S. HERSHEY | : | |
| MEDICAL CENTER, | : | |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## REPLY BRIEF IN RESPONSE TO PLAINTIFF'S ANSWER AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS PURSUANT TO F.R.C.P. 56

# TABLE OF CONTENTS

I.   RELEVANT PROCEDURAL HISTORY .......................................1

II.  STATEMENT OF FACTS.................................................................1

III. RESTATEMENT OF QUESTION INVOLVED ...........................1

IV. ARGUMENT ..................................................................................2

    A.   The Special Relationship Theory is inapplicable to Plaintiff's claim..........................................................................2

    B.   Plaintiff failed to point to evidence that she observed a negligent act sufficient to establish a NIED claim as a bystander ...........................................................................6

        1.   *Observation of a Negligent Act* .....................................10

        2.   *Observation of a Negligent Omission* .........................10

V.   CONCLUSION................................................................................15

# TABLE OF AUTHORITIES

## Cases

Bloom v. Dubois Reg'l Med. Ctr., 597 A.2d 671 (Pa. Super. 1991). 8, 9, 10

Brown v. Philadelphia College of Osteopathic Med., 760 A.2d 863 (Pa. Super. 2000)..................................................................................2

Campbell v. Delbridge, 670 N.W.2d 108 (Iowa 2003)..............................3

Davis v. Corizon Health, Inc., Civil Action No. 14-1490, 2015 U.S. Dist. LEXIS 15083 (E.D. Pa. Feb. 9, 2015)....................................................3

Dillon v. Legg, 441 P.2d 912 (Ca. 1968)....................................................7

Douglas v. Doe, Civil Action No. 10-5574, 2014 U.S. Dist. LEXIS 127787 (E.D. Pa. Sep. 12, 2014)..........................................................3

Freedman v. Fisher, Civil Action No. 13-3145, 2014 U.S. Dist. LEXIS 139226 (E.D. Pa. Sep. 30, 2014)..........................................................4

Freeman v. Harris Cnty., 183 S.W.3d 885 (Tex.App. 2006)....................3

Halliday v. Beltz, 514 A.2d 906 (Pa. Super. 1986). ...........................9, 10

Hinchey v. Univ. of Pa. Health Sys., 30 Pa. D. & C. 5th 390 (C.P. 2013). 4

Hoffner v. Hodge, 407 A.2d 940 (Pa. Cmwlth. 1979)..............................10

Kroposky v. Luis De La Fuente, M.D., No. 10 CV 703, 2011 Pa. Dist. & Cnty. Dec. LEXIS 598 (C.P. Ct. Lackawanna Cnty, March 11, 2011). ....................................................................................................11

Kryssmalski v. Tarasovich 622 A.2d 298 (Pa. Super. 1993). ...................8

Larsen v. Banner Health Sys., 81 P.3d 196 (Wyo. 2003). ........................3

Leblanc v. Willis, 2012 Pa. Dist. & Cnty. Dec. LEXIS 310 (C.P. Ct. Lehigh Cnty., June 27, 2012)....................................................... 11, 12

Love v. Cramer, 606 A.2d 1175 (Pa. Super. 1992)............................7, 11

M.S. v. Twin Valley Sch. Dist., Civil Action No. 15-5733, 2016 U.S. Dist. LEXIS 190850 (E.D. Pa. June 14, 2016)..............................................3

Martin v. Evans, 711 A.2d 458 (Pa. 1998). ..............................................2

Menorah Chapels at Millburn v. Needle, 899 A.2d 316 (N.J. Super. Ct. App. Div. 2006). ...................................................................................3

Mulawka v. Commonwealth, Civil Action No. 11-1651, 2012 U.S. Dist. LEXIS 185164 (W.D. Pa. Nov. 28, 2012).............................................3

Oswald v. LeGrand, 453 N.W.2d 634 (Iowa 1990)...................................3

Perry-Rogers v. Obasaju, 723 N.Y.S.2d 28 (N.Y. App. Div. 2001). ..........3

Sinn v. Burd, 404 A.2d 672 (Pa. 1979).....................................................7

Snyder v. W. Penn Allegheny Health Sys., No. GD 13-006360, 2014 Pa. Dist. & Cnty. Dec. LEXIS 10808 (C.P. Allegheny Cty. Feb. 19, 2014)..3

<u>Sonlin v. Abington Mem. Hosp.</u>, 748 A.2d 213 (Pa. Super. 2000). ........... 9

<u>Toney v. Chester Cty. Hosp.</u>, 36 A.3d. 83 (Pa. 2011). ........................... 2, 5

<u>Turner v. Med. Ctr.</u>, 686 A.2d 830 (Pa. Super. 1997). ........................... 10

<u>Weiley v. Albert Einstein Med. Ctr.</u>, 51 A.3d 202 (Pa. Super. 2012). ...... 4

<u>Young v. Kahn</u>, Civil Action No. 11-380, 2012 U.S. Dist. LEXIS 39985
    (W.D. Pa. Feb. 21, 2012). ...................................................................... 3

## I.      RELEVANT PROCEDURAL HISTORY

On February 20, 2018, The Milton S. Hershey Medical Center ("Medical Center") filed a Motion for Partial Summary Judgment and Brief in Support due to the Plaintiff's inability to meet her burden of proof as to her claim of negligent infliction of emotional distress (NIED). (See, Docs. 27, 29.)  On March 9, 2018, Plaintiff filed an Answer and Memorandum of Law within which Plaintiff erroneously contends that she has set forth a claim for NIED under both the bystander and special relationship theories.  (See, Doc. 30.)  The Medical Center files the within Reply Brief in response.

## II.     STATEMENT OF FACTS

The Medical Center incorporates by reference the Statement of Material Facts (SMF) filed with its Motion.

## III.    RESTATEMENT OF QUESTION INVOLVED

A.      Whether Defendant is entitled to judgment as a matter of law as to the Plaintiff's claim of NIED when Plaintiff cannot support her claim under either the bystander or special relationship theory?

(Suggested Answer: Yes.)

1

## IV.  ARGUMENT

### A.  The Special Relationship Theory is inapplicable to Plaintiff's claim

Within its Motion and Brief, the Medical Center admittedly did not address the special relationship theory as asserted within Toney. However, this was not because this theory of recovery cannot be denied, as Plaintiff contends, but rather because it is simply not applicable.

To recover for NIED under the special relationship theory, a plaintiff must establish the elements of a negligence claim, the first of which is duty. See Brown v. Philadelphia College of Osteopathic Med., 760 A.2d 863, 868 (Pa. Super. 2000), appeal denied, 781 A.2d 137 (Pa. 2001) (quoting Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)).

Claims under this theory are limited to preexisting relationships involving "duties that obviously and objectively hold the potential of deep emotional harm in the event of breach." Toney v. Chester Cty. Hosp., 36 A.3d. 83, 95 (Pa. 2011) (emphasis added).  This theory of liability applies only to limited contexts in which a defendant has a special relationship with the plaintiff such that an implied duty to care for the plaintiff's emotional well-being exists.  Id.; see also M.S. v. Twin

Valley Sch. Dist., Civil Action No. 15-5733, 2016 U.S. Dist. LEXIS 190850, at *55 (E.D. Pa. June 14, 2016) (attached as Ex. A).

Claims are limited to certain categories of relationships accepted by the defendant, usually by contractual agreement. Id. at 92. Although the Toney Court declined to create an exhaustive list of situations wherein a special relationship exists, it provided examples from other states including care of a deceased body, childbirth, and doctor-patient relationships.[1]  Notably, none of the cases imposed a duty to a patient's caregivers, unless a deceased body or child was involved.

Following Toney, courts have found a special relationship between a medical provider and patient.[2]  Conversely, courts have found no special relationship between a medical provider and a patient's next-of

---

[1] See Menorah Chapels at Millburn v. Needle, 899 A.2d 316 (N.J. Super. Ct. App. Div. 2006); Freeman v. Harris Cnty., 183 S.W.3d 885 (Tex. App. 2006); Perry-Rogers v. Obasaju, 723 N.Y.S.2d 28 (N.Y. App. Div. 2001); Oswald v. LeGrand, 453 N.W.2d 634 (Iowa 1990); Campbell v. Delbridge, 670 N.W.2d 108 (Iowa 2003); Larsen v. Banner Health Sys., 81 P.3d 196 (Wyo. 2003).

[2] See Snyder v. W. Penn Allegheny Health Sys., No. GD 13-006360, 2014 Pa. Dist. & Cnty. Dec. LEXIS 10808 (C.P. Allegheny Cty. Feb. 19, 2014);  Davis v. Corizon Health, Inc., Civil Action No. 14-1490, 2015 U.S. Dist. LEXIS 15083 (E.D. Pa. Feb. 9, 2015); Douglas v. Doe, Civil Action No. 10-5574, 2014 U.S. Dist. LEXIS 127787 (E.D. Pa. Sep. 12, 2014); Young v. Kahn, Civil Action No. 11-380, 2012 U.S. Dist. LEXIS 39985 (W.D. Pa. Feb. 21, 2012); Mulawka v. Commonwealth, Civil Action No. 11-1651, 2012 U.S. Dist. LEXIS 185164 (W.D. Pa. Nov. 28, 2012).

kin, child, or spouse.[3]   Notably, in <u>Freedman</u>, <u>infra</u>, the wife of a deceased patient asserted a claim against a physician and medical facility under the special relationship theory, alleging that she was present during her husband's care and treatment, observed his pain, suffering, anguish, and fear, and, as a result, suffered emotional distress.  <u>Freedman v. Fisher</u>, Civil Action No. 13-3145, 2014 U.S. Dist. LEXIS 139226 (E.D. Pa. Sep. 30, 2014) (attached as Ex. B).  The Court, however, found no special relationship between the wife and hospital, or any of its doctors, such that a duty was owed to the wife.  <u>Id.</u> at *6.  The Court offered the following explanation:

> <u>[A] doctor's duty is to the patient and not to the concerned or worried relative</u>. (internal citation omitted)  <u>There is no suggestion that a relative's claim should derive from the duty to the patient</u>.  There is a sound reason for confining a doctor's duty to the patient, especially in light of a possible life and death situation.  Under such circumstances a doctor should be able to give all of his attention to the patient and not be worried about whether he has perceived and prevented any emotional distress, severe or otherwise, in one or more persons previously unknown to him, persons whom he may not have even met.

<u>Id.</u> at *9-10 (emphasis added).

---

[3] <u>See</u> <u>Weiley</u>, 51 A.3d 202; <u>Hinchey v. Univ. of Pa. Health Sys.</u>, 30 Pa. D. & C. 5th 390 (C.P. 2013); <u>Freedman v. Fisher</u>, Civil Action No. 13-3145, 2014 U.S. Dist. LEXIS 139226 (E.D. Pa. Sep. 30, 2014)).

Ultimately, the legal question of whether a duty exists under the special relationship theory is left to trial judges to decide on a case-by-case basis prior to trial, weighing the following five factors:

(1) the relationship between the parties;
(2) the social utility of the actor's conduct;
(3) the nature of the risk imposed and foreseeability of the harm incurred;
(4) the consequences of imposing a duty upon the actor; and
(5) the overall public interest in the proposed solution.

Id. at 95, n. 11.

Plaintiff's claim for NIED under the special relationship theory fails at the outset because she cannot establish that the Medical Center owed her a duty of care.  Plaintiff incorrectly asserts that because the Medical Center was charged with diagnosing, treating, and advising Mr. Vargas, it somehow owed an implied duty to Mrs. Vargas to care for her emotional well-being.  In support of this contention, Plaintiff declares that a husband-wife relationship is "unquestionably in the same category and level" as the pregnant mother's relationship with her unborn child in Toney such that Mrs. Vargas was in a special relationship with Mr. Vargas's providers.  This line of reasoning, however, conflates and confuses the close familial relationship required for recovery under the bystander theory with the preexisting fiduciary

5

relationship required under the special relationship theory and, ultimately, misconstrues the law.

Notably, Plaintiff fails to point to any case law wherein a special relationship was determined to exist between a medical provider and a patient's wife, and ignores relevant case law subsequent to <u>Toney</u> through which it was determined that no special relationship exists. Indeed, Plaintiff's reasoning is directly at odds with the Eastern District's interpretation of a physician's duty, as articulated in <u>Freedman</u>, which confines a physician's duty to the patient, and specifically notes that there is no claim for emotional distress, on the part of a relative, derivative from that duty.

Because Plaintiff has provided no affirmative evidence to show that the Medical Center owed a duty to care for the emotional well-being of Mrs. Vargas, Plaintiff cannot succeed in her claim under the special relationship theory.

**B.** **Plaintiff failed to point to evidence that she observed a negligent act sufficient to establish a NIED claim as a bystander**

The Plaintiff fails to demonstrate how her mere presence at the
Medical Center during her husband's admission constitutes a "sensory
and contemporaneous observation of the accident."

To recover for NIED under the bystander theory, the plaintiff
must establish foreseeability based on an analysis of three factors: (1)
the plaintiff's proximity to the scene of the accident; (2) the plaintiff's
sensory and contemporaneous observation of the accident; and (3) the
plaintiff's close relationship to the victim.  Sinn v. Burd, 404 A.2d 672,
685 (Pa. 1979) (quoting Dillon v. Legg, 441 P.2d 912, 920-21 (Ca. 1968)).
The Pennsylvania Superior Court has recognized as follows:

> The basis for recovery for a claim of negligent infliction of
> emotional distress is the traumatic impact of viewing the
> negligent injury of a close relative.  A person who does not
> experience a sensory and contemporaneous observance of the
> injury does not state a cause of action for negligent infliction
> of emotional distress.  In formulating the rule, the Supreme
> Court contemplated a discrete and identifiable traumatic
> event to trigger recovery.  In the absence of such an event,
> no recovery is permitted.

Love v. Cramer, 606 A.2d 1175, 1177 (Pa. Super. 1992) (emphasis
added).

Panels of the Superior Court have variously phrased the
observation requirement as requiring that the plaintiff observe "the

7

accident," "the negligent act," "the infliction of the negligent harm," "the negligent event," and/or the "traumatic event." Bloom v. Dubois Reg'l Med. Ctr., 597 A.2d 671, 682 (Pa. Super. 1991) (internal citations omitted).  Regardless of the terminology, the "gravamen of the observance requirement is clearly that the plaintiff . . . must have observed the traumatic infliction of the injury on his or her close relative at the hands of the defendant."  Id.  There must be a discrete and identifiable traumatic event to trigger recovery.  See Tackett v. Encke, 509 A.2d 1310, 1311-12 (Pa. Super. 1986).

Admittedly, the Superior Court has allowed recovery where a plaintiff did not visually observe the infliction of negligent harm.  See Kryssmalski v. Tarasovich 622 A.2d 298 (Pa. Super. 1993), appeal denied, 636 A.2d 634 (Pa. 1993) (plaintiff contemporaneously observed an accident in a parking lot when she heard the crash from inside a store).  However, Kryssmalski does not hold that a plaintiff is not required to witness the traumatic event.  Rather, the Court merely expanded the concept of sensory and contemporaneous observation beyond visual sensory perception, to include all of an individual's senses.  Id. at 304.

8

Witnessing the effects of a traumatic event is insufficient to establish a claim.  See Halliday v. Beltz, 514 A.2d 906, 908 (Pa. Super. 1986).  "To recover the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiff's relative, with no buffer of time or space to soften the blow."  Bloom, 597 A.2d at 682.  A plaintiff who does not observe the infliction of negligent harm cannot recover damages for the mental trauma of seeing the subsequent events.  See, e.g., Sonlin v. Abington Mem. Hosp., 748 A.2d 213, 218 (Pa. Super. 2000) (a plaintiff who learned that discoloration on her infant child's leg, which she had been assured was a bruise but was, in fact, a thrombosis, did not witness the infliction of negligent harm when the infant's leg was later amputated); Bloom, 597 A.2d at 683 (a plaintiff, whose wife informed defendants of her mental disorder upon admission to the psychiatric unit, did not witness the infliction of negligent harm when he later observed his wife in the aftermath of her suicide attempt at the hospital); Halliday, 514 A.2d at 908 (plaintiffs who sat in the operative waiting area during their wife/mother's surgery did not witness the infliction of negligent harm when the patient later died from complications).

9

### 1. *Observation of a Negligent Act*

In the healthcare context, Pennsylvania courts have routinely held that the plaintiff must observe the medical provider's negligent act which inflicted injury upon a relative.  For example, in Hoffner, infra, a patient's sister and mother sought damages for mental pain and anguish after witnessing the effects of a negligently performed surgery. The Court dismissed the claim because "the law of Pennsylvania requires the personal observation of the event," and the plaintiffs in that case only witnessed the results.  Hoffner v. Hodge, 407 A.2d 940, 942 (Pa. Cmwlth. 1979).  Similarly, in Halliday, supra, a patient's husband and daughter sought damages after witnessing the complications and death that followed a negligently performed surgery. The Court upheld dismissal of the claim because, although the plaintiffs were present at the hospital, they had not witnessed the surgery. Halliday, 514 A.2d at 908.

### 2. *Observation of a Negligent Omission*

There are some circumstances when the observation of a negligent omission may lead to recovery for NIED.  Bloom, 597 A.2d at 683; see also Turner v. Med. Ctr., 686 A.2d 830 (Pa. Super. 1997) (a plaintiff who

observed a hospital's failure to respond to requests for medical assistance, and was forced to assist in the delivery of her sister's stillborn fetus, witnessed the infliction of negligent harm); <u>Love</u>, 606 A.2d 1175 (a plaintiff who requested tests, which were refused, and then observed her mother's fatal heart attack, witnessed the infliction of negligent harm).  However, there is an important distinction between observing an omission, where care is refused or simply not given, and observing an attempt to provide care that ultimately proves to be unsuccessful.  <u>See</u> <u>Kroposky v. Luis De La Fuente, M.D.</u>, No. 10 CV 703, 2011 Pa. Dist. & Cnty. Dec. LEXIS 598 (C.P. Ct. Lackawanna Cnty, March 11, 2011) (attached as Ex. C); <u>Leblanc v. Willis</u>, 2012 Pa. Dist. & Cnty. Dec. LEXIS 310 (C.P. Ct. Lehigh Cnty., June 27, 2012) (attached as Ex. D).

For example, in <u>Kroposky</u>, <u>supra</u>, the plaintiff arguably stated a claim under the bystander theory when she complained to defendants about her child's respiratory distress, but they failed to take action and instead allowed the child's condition to worsen.  2011 Pa. Dist. & Cnty. Dec. LEXIS 598, at *17.  On the other hand, in <u>Leblanc</u>, <u>supra</u>, the plaintiffs failed to show an infliction of negligent harm when the

defendants exhibited a concerted attempt to treat the plaintiffs' family member, and there was no evidence of a refusal to treat.  2012 Pa. Dist. & Cnty. Dec. LEXIS 310, at *22.  The Court explained that, while a refusal to treat might equate to a traumatic infliction of harm, an attempt to treat coupled with good faith reassurances does not.  Id. at *22 – 23.  The Court further explained:

> The fact that in hindsight such treatment might ultimately be viewed as little more than a concatenation of errors nevertheless cannot transform a bona fide attempt to render assistance into the sort of discrete traumatic event, analogous to an automobile accident or fire, which remains a prerequisite for recovery.  By contrast, the latter category of traumatic event might readily be said to exist when a family member implores for help and, in the disregard of duty and with the foreseeable result of not only peril to the afflicted but emotional injury to the family member seeking aid, a healthcare provider merely turns a cold shoulder.

Id. at *23.

In the present case, there is no evidence to establish a sensory and contemporaneous observation of the infliction of negligent harm, through a negligent act or omission on the part of the Medical Center, to support Plaintiff's claim under the bystander theory.

Plaintiff contends that she was at the "scene of the trauma" and contemporaneously observed "negligent acts and omissions."  More

12

specifically, she contends that she was present for the negligent conclusion that her husband's GI bleed was from the stomach as well as his discharge planning.  Additionally, Plaintiff claims that she was told it was "fine" for her husband to fly; however, Mrs. Vargas provided no such testimony within her deposition, attached to Plaintiff's Answer as Exhibit B.  Rather, she recounted three conversations with Medical Center providers, none of which included any statement that it was safe for Mr. Vargas to fly.  At this point, there is no affirmative evidence to support this specific contention.

The facts of this case demonstrate that Mrs. Vargas never observed an infliction of negligent harm upon her husband by Medical Center staff.  She was not present for the colonoscopy or endoscopy. (SMF, ¶ 10.)  Like the plaintiffs in <u>Hoffner</u> and <u>Halliday</u>, she only witnessed the events that followed.  After the conclusion of these medical procedures, Mrs. Vargas learned that the GI staff believed that her husband's bleeding arose from stomach ulcers.  (Id., ¶ 11.)  Despite feeling as though she could ask questions at the time, her only question was whether she could see him.  (SMF, ¶ 12.)  Certainly, there is no indication that she knew or suspected that her husband's proffered

13

diagnosis was incorrect.  Similarly, although she was present when her husband was discharged, there is no indication that she knew or suspected that the discharge was inappropriate.

Additionally, there is no evidence to establish an observation of a negligent omission to support Plaintiff's assertions that she was "acutely aware" of any omission on the part of the Medical Center.  (See Compl., ¶ 95 [sic].)  Unlike the medical providers in Bloom, Love, and Kroposky, who refused or failed to respond to requests for medical assistance, Medical Center staff took affirmative action to resuscitate Mr. Vargas and to perform diagnostic studies including a CT scan, colonoscopy, and endoscopy.  (SMF, ¶¶ 6-9.)  Although Mrs. Vargas alleges that the Medical Center "failed to recognize the failure of either the upper GI [endoscopy] or colonoscopy to identify a bleeding source," (Compl., ¶ 29) there is no evidence to suggest that she recognized a failure to act on the part of the Medical Center at any point during her husband's admission.  Rather, this case is more analogous to Leblanc, as there was a concerted attempt to treat Mr. Vargas and, therefore, no omission equivalent to a traumatic infliction of harm.

14

The only traumatic event observed by Mrs. Vargas was the course of events that transpired on the flight from Philadelphia to Florida. This, however, is not enough to support a claim under the bystander theory because it does not constitute a contemporaneous observation of the traumatic infliction of harm, but rather, an observation of the "effects" of the Medical Center's alleged negligence.

Because Plaintiff has provided no affirmative evidence to show that she observed the infliction of negligent harm upon her husband, through a negligent act or omission on the part of the Medical Center, Plaintiff cannot succeed in her claim under the bystander theory.

## V.   <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully requests that this Honorable Court grant its Motion for Summary Judgment with respect to Plaintiff's claim for negligent infliction of emotional distress.

Respectfully submitted,

McQUAIDE BLASKO, INC.

Dated: March 16, 2018

/s Janene M. Druck
Jonathan B. Stepanian, Esquire
PA #89147
Janene M. Druck, Esquire
PA #322721
1249 Cocoa Ave., Suite 210

Hershey, PA  17033
(717) 533-4444
jbstepanian@mqblaw.com
jmdruck@mqblaw.com
Attorneys for Defendant
Penn State Hershey Milton S.
Hershey Medical Center