No *Shepard's* Signal™
As of: March 14, 2018 6:40 PM Z

# *M.S v. Twin Valley Sch. Dist.*

United States District Court for the Eastern District of Pennsylvania

June 14, 2016, Decided; June 14, 2016, Filed

CIVIL ACTION NO. 15-5733

**Reporter**
2016 U.S. Dist. LEXIS 190850 *

M.S, A MINOR, BY AND THROUGH HIS PARENT AND GUARDIAN, N.S., and N.S. IN HER OWN RIGHT v. TWIN VALLEY SCHOOL DISTRICT, et al.

## Core Terms

motion to dismiss, Counts, intentional infliction of emotional distress, amended complaint, immunity, motor vehicle, negligent infliction of emotional distress, punitive damages, argues, misconduct, transportation, allegations, harassment, outrageous, provides, pled, reply brief, courts, parties, rights, factual allegations, definite statement, school district, tort claim, discovery, emotional, inflicted, remedies, cases, deliberate indifference

**Counsel:  [*1]** For M.S., A MINOR, BY AND THROUGH HIS PARENT AND GUARDIAN, N.S., N.S., IN HER OWN RIGHT, Plaintiffs: DAVID G. C. ARNOLD, LEAD ATTORNEY, King Of Prussia, PA USA; MUSA A. JAN, LEAD ATTORNEY, LAW OFFICES OF MUSA JAN, Gulph Mills, PA USA.

For Twin Valley School District, Defendant: JOSEPH J. SANTARONE, JR., LEAD ATTORNEY, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Philadelphia, PA USA; JOHN F. KENNEDY, GRACE & KENNEDY, PC, Philadelphia, PA USA.

For Chester County Intermediate Unit, Defendant, Cross Defendant, Cross Claimant: DAVID SALAZAR, JOSEPH J. SANTARONE, JR., MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Philadelphia, PA USA.

For Barbara Tury, Defendant: DAVID SALAZAR, JOSEPH J. SANTARONE, JR., MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Philadelphia, PA USA.

For George Krapf, Jr. And Sons, Inc., doing business as KRAPF BUS COMPANIES, Defendant: JEREMY ABIDIWAN-LUPO, FOWLER HIRTZEL MCNULTY SPAULDING LLC, Philadelphia, PA USA; JOSEPH R. FOWLER, FOWLER HIRTZEL MCNULTY & SPAULDING, LLP, Philadelphia, PA USA.

For District Attorney of Chester County, Respondent: GUY A. DONATELLI, LEAD ATTORNEY, LAMB & MCERLANE, P.C., West Chester, PA USA.

For Chief Court Reporter of The Chster County Court of Common **[*2]** Pleas, Respondent: GUY A. DONATELLI, LEAD ATTORNEY, LAMB & MCERLANE, P.C., West Chester, PA USA; ANDREW J. COVAL, ADMINISTRATIVE OFFICE OF THE COURT, Philadelphia, PA USA.

For George Krapf, Jr. And Sons, Inc., Cross Claimant, Cross Defendant: JEREMY ABIDIWAN-LUPO, FOWLER HIRTZEL MCNULTY SPAULDING LLC, Philadelphia, PA USA; JOSEPH R. FOWLER, FOWLER HIRTZEL MCNULTY & SPAULDING, LLP, Philadelphia, PA USA.

**Judges:** Legrome D. Davis, J.

**Opinion by:** Legrome D. Davis

## Opinion

ORDER

AND NOW, this 14th day of June 2016, after consideration of Defendants Chester County Intermediate Unit and Barbara Tury's Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 16), Plaintiffs' Brief in Opposition to Defendants Chester County Intermediate Unit and Barbara Tury's Motion to Dismiss (Doc. No. 21-2), Reply Brief of Defendants Chester County Intermediate Unit and Barbara Tury in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 25), Plaintiffs' Sur-Reply Brief in Opposition to

Defendants Chester County Intermediate Unit and Barbara Tury's Reply Brief (Doc. No. 29), Memorandum of Law in Support of Defendant Twin Valley School District's 12(b)(6) Motion to Dismiss Plaintiffs' **[*3]** Amended Complaint (Doc. No. 17), Brief in Support of Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)* of Defendant, George Krapf, Jr. and Sons, Inc. (Doc. No. 19-1), Plaintiffs' Brief in Opposition to Defendant Twin Valley School District's Motion to Dismiss (Doc. No. 22-2), and Plaintiffs' Brief in Opposition to Defendant George Krapf, Jr. and Sons Inc.'s Motion to Dismiss (Doc. No. 26-2), it is hereby ORDERED as follows:

1. Defendants Chester County Intermediate Unit and Barbara Tury's motion to dismiss (Doc. No. 16) is GRANTED in part and DENIED in part.

2. Defendants Chester County Intermediate Unit and Barbara Tury's motion for a more definite statement (Doc. No. 25) is DENIED.

3. Defendant Twin Valley School District's motion to dismiss (Doc. No. 17) is GRANTED.

4. Defendant George Krapf, Jr. and Sons, Inc.'s motion to dismiss (Doc. No. 19-1) is GRANTED in part and DENIED in part.

I. Background

Plaintiff, M.S., is a nine-year-old child who is eligible for special education services under the *Individuals with Disabilities Education Act* ("IDEA") and *Section 504 of the Rehabilitation Act*. (Am. Compl. ¶ 1, Doc. No. 15.) Plaintiff N.S. is M.S.'s parent and guardian. (Am. Compl. ¶ 2.) M.S. and N.S. bring this action **[*4]** against Defendants Twin Valley School District, Chester County Intermediate Unit ("CCIU"), Barbara Tury, and George Krapf, Jr. and Sons, Inc. Twin Valley is a public school district located within the Commonwealth of Pennsylvania and that was responsible for providing appropriate educational services, including transportation services, to M.S. (Am. Compl. ¶ 4.) CCIU is a public agency established under Pennsylvania law that provides educational, administrative, and support services to public schools in Chester County, Pennsylvania and that operates the Child and Career Development Center, a public school that is located in Coatesville, Pennsylvania. (Am. Compl. ¶¶ 6-7.) Barbara Tury is employed by CCIU at the Child and Career Development Center. (Am. Compl. ¶ 9.) Defendant Krapf is a Pennsylvnia corporation that provides transportation services to M.S. on behalf of Twin Valley. (Am. Compl. ¶ 8.)

The events underlying this action occurred during the 2013 through 2014 school year, when M.S. was seven years old and in the second grade at the Child and Career Development Center, where he participated in the Child and Relationship Empowerment Program, through which he was assigned to work **[*5]** with a clinical staff therapist, Barbara Tury. (Am. Compl. ¶¶ 15-17.)

Plaintiffs allege that Twin Valley and CCIU maintained control over the bus on which M.S. rode to and from the Child and Career Development Center and that was owned by Krapf. (Am. Compl. ¶¶ 18-19.) According to Plaintiffs, the bus driver was employed by Krapf, as was the bus aide, who allegedly sat behind the driver and whose job it was to monitor student conduct and ensure student safety. (Am. Compl. ¶ 20.) On the bus, students were assigned to specific seats; M.S. was assigned a seat next to a thirteen-year-old student, identified in the complaint only as "Student X," who was also a special needs child who attended the Child Career and Development Center. (Am. Compl. ¶ 21.)

Plaintiffs allege that beginning on or after October 23, 2013 and continuing for many months, Student X sexually harassed and assaulted M.S. on the bus while Krapf transported the students to and from the Child Development Center, including by writing on M.S.'s genital area, fondling M.S.'s genitals, and performing oral sex on M.S. against M.S.'s will. (Am. Compl. ¶¶ 26, 34.) According to Plaintiffs, this conduct continued while Krapf employees **[*6]** were present on the bus. (Am. Compl. ¶ 27.) Plaintiffs allege that Krapf did not have any surveillance cameras installed on the bus. (Am. Compl. ¶ 28.)

In January of 2014, N.S. discovered that Student X was taunting M.S. (Am. Compl. ¶¶ 31, 52.) Following this discovery, she contacted Barbara Tury to advise her of what had been happening; Tury allegedly informed N.S. that the matter would be investigated and addressed, but did not follow up with N.S. (Am. Compl. ¶¶ 32-33.) N.S. alleges that on March 19, 2014, she discovered writing on M.S.'s genital area while giving him a bath and then learned that Student X had been fondling M.S.'s genitals. (Am. Compl. ¶¶ 34, 38.) On the same day, N.S. then emailed M.S.'s support team at the Child and Career Development Center, including M.S.'s behavioral specialist and Tury. (Am. Compl. ¶ 39.) Defendant Tury advised N.S. that she would address the situation the following morning. (Am. Compl. ¶ 39.)

N.S. alleges that she did not "receive a satisfactory response" from the Child and Career Development Center, so she contacted the state police. (Am. Compl.

¶ 41.) Defendant Tury then contacted N.S., allegedly admonishing her for violating protocol by informing **[\*7]** the police rather than allowing the school to address the issue itself. (Am. Compl. ¶ 42.)

N.S. then contacted Twin Valley's Transportation Services to inform them about the matter and to advise them that the police were involved. (Am. Compl. ¶ 43.) According to N.S., the district's transportation service office told her that they could not provide separate transportation for the two students, but they could have an aide sit with M.S. (Am. Compl. ¶ 44.) N.S. declined the district's offer and instead withdrew M.S. from the bus service, choosing to arrange transportation to and from the school herself. (Am. Compl. ¶ 45.)

N.S. next contacted the principal of M.S.'s school, Dr. Susan Mateka. (Am. Compl. ¶ 47.) Dr. Mateka informed N.S. that she was not Tury's direct supervisor. (Am. Compl. ¶ 47.) On April 5, 2014, N.S. emailed Twin Valley's superintendent, Dr. Robert Pleis, to discuss Twin Valley's allegedly inappropriate response to her complaints. (Am. Compl. ¶ 48.) Following this conversation, Twin Valley student services contacted N.S. and told her that a seat on a different bus had become available. (Am. Compl. ¶ 49.)

M.S. and his family were then interviewed by the Pennsylvania State **[\*8]** Police, who the Child and Career Development Center had not contacted themselves. (Am. Compl. ¶¶ 50-51.) N.S. discovered the full nature of Student X's alleged conduct when M.S. was interviewed by representatives from the special victims unit. (Am. Compl. ¶ 52.)

In their complaint, Plaintiffs further claim that, after N.S. reported Student X's conduct to the police, the Child and Career Development Center "decided that M.S. was not allowed to play in the gymnasium," allegedly in retaliation for N.S.'s contacting the police. (Am. Compl. ¶ 53.)

Additionally, Plaintiffs claim that, in the cafeteria at school, Student X "used horrible and vulgar language towards M.S. while taunting him and calling him 'stupid' and 'useless' . . . [and] told [M.S.] that M.S. was going to jail and not Student X." (Am. Compl. ¶ 54.) These encounters allegedly took place on May 5, 12, 13, 14, 15, 20, 21, 22, and 23. (Am. Compl. ¶ 55.) On May 25, 2014, after N.S. learned of these incidents, she emailed Dr. Mateka to inform her of the conduct. (Am. Compl. ¶ 55.) Plaintiffs also allege that M.S. was forced to go to the school store at the Child and Career Development Center while Student X was there working in **[\*9]** the store. (Am. Compl. ¶ 56.)

N.S. claims that both she and M.S. have sought and continue to require psychological and psychiatric treatment, which N.S. pays for through personal resources. (Am. Compl. ¶¶ 57-58.)

Plaintiffs filed a five-count complaint on October 21, 2015. They amended the complaint on December 30, 2015 to modify one of the party's names. In Count I, Plaintiffs state that they "can recover for the damages inflicted upon them by the [CCIU] and Twin Valley School District pursuant to *Title IX of the Education Amendments of 1972* and *42 U.S.C. § 1983*," and they allege that "Student X sexually harassed/attacked M.S. for an extended period of time from October 23, 2013 through 2015." (Am. Compl. ¶¶ 60, 63.) In Count II, they allege that they can recover pursuant to Title IX and *§ 1983* for the injuries inflicted by CCIU, specifically because CCIU retaliated against Plaintiffs for reporting Student X's conduct. (Am. Compl. ¶¶ 74, 76.) Count III states a negligence claim against all of the Defendants (see Am. Compl. ¶¶ 83-90), and Count IV is a claim against all of the Defendants for intentional infliction of emotional distress (see Am. Compl. ¶¶ 93-101.) In Count V, Plaintiffs claim that all four Defendants negligently inflicted emotional distress. **[\*10]** (See Am. Compl. ¶¶ 104-11.) In addition to other relief, Plaintiffs seek punitive damages against Defendants Krapf and Tury under Counts III, IV, and V of the complaint. (See Am. Compl. ¶¶ 91. 102, 112.)

All Defendants have filed motions to dismiss Plaintiffs' amended complaint pursuant to *Federal Rule of Civil Procedure 12(b)*, and all three motions are now ripe for review.

II. Legal Standard

In evaluating a motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, a court must first separate the factual and legal elements of the claim and "then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." E.g., *Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)* (citations omitted). A court must accept all factual allegations in the complaint as true: it must interpret the factual allegations in the light most favorable to the plaintiff and draw all inferences in the plaintiff's favor. See, e.g., *Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)*; *PG Publ'g Co. v. Aichele, 705 F.3d 91, 97 (3d Cir. 2013)*. However, "rote recitals of the elements of a cause of action, legal

conclusions, and mere conclusory statements" should be disregarded. *James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012)*; see *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)).

Dismissal for failure to state a claim is proper if "the allegations **[*11]** in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. While factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Id. at 555*; see *Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)* (stating that plaintiffs need only allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of their claim (quoting *Twombly, 550 U.S. at 556*)). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal, 556 U.S. at 679*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (alteration in Iqbal) (quoting *Fed. R. Civ. P. 8(a)(2)*).

III. Discussion

*A. Defendants CCIU and Barbara Tury's motion to dismiss*

Defendants CCIU and Barbara Tury filed a joint motion to dismiss Counts III, IV, and V of Plaintiffs' complaint; they also argue that punitive damages against Tury are unwarranted. (Defs. CCIU & Barbara Tury's Mem. Law Supp. Mot. Dismiss 1, 17, Doc. No. 16.) The Court addresses each argument in turn.[1]

*1. Counts III and V — negligence and negligent infliction of emotional distress*

Defendants argue that Plaintiffs' **[*12]** claims against them in Counts III and V of their complaint for negligence and negligent infliction of emotional distress

___
[1] Defendants also filed a reply brief in which they raised new arguments not present in their initial motion for dismissal. The Court considers these arguments following its discussion of the set of arguments included in Defendants' original motion.

should be dismissed pursuant to Pennsylvania's Political Subdivision Tort Claims Act, under which municipalities and municipal employees are generally immune from tort liability, except through eight specific exceptions. (CCIU & Tury's Mot. Dismiss 8.) Plaintiffs argue in response, however, that the motor vehicle exception applies in this case because "Student X's sexual attacks on M.S. occurred while M.S. and Student X were riding on a bus to and from the Child and Career Development Center," and the motor vehicle exception "applies when the injury at issue occurs while the vehicle is transporting the victim." (Pls.' Br. Opp'n Defs.' Mot. Dismiss 7, Doc. No. 21-2.)

*Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541*, provides that, apart from specifically enumerated exceptions, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." The agency's immunity applies equally to individual employees of the agency. *42 Pa. Cons. Stat. § 8545*. Under the statute's provisions, **[*13]** there are eight areas in which "acts by a local agency or any of its employees may result in the imposition of liability on a local agency":

    (1) Vehicle liability . . .;
    (2) Care, custody or control of personal property . . .;
    (3) Real property . . .;
    (4) Trees, traffic controls, and street lighting . . .;
    (5) Utility service facilities . . .;
    (6) Streets . . .;
    (7) Sidewalks . . .; and
    (8) Care, custody and control of animal . . . .

Id. *§ 8542(b)*. Pennsylvania municipal agencies and employees are generally immune from tort liability arising from acts outside of these categories unless a plaintiff proves that a municipal employee's act constituted a crime, actual fraud, actual malice, or willful misconduct. Id. *§ 8550*. Additionally, the "exceptions to the absolute rule of immunity expressed in the statute 'must be narrowly interpreted given the express legislative intent to insulate political subdivisions from tort liability.'" *Dorsey v. Redman, 626 Pa. 195, 96 A.3d 332, 341 (Pa. 2014)* (quoting *Mascaro v. Youth Study Ctr., 514 Pa. 351, 523 A.2d 1118, 1123 (Pa. 1987))*.

*Section 8542(b)(1)* provides that "[t]he operation of any motor vehicle in the possession or control of the local agency" may result in liability and defines a motor vehicle as "any vehicle which is self-propelled and any

attachment thereto." *42 Pa. Cons. Stat. § 8542(b)(1)*. Defendants CCIU and Tury argue that the motor vehicle **[*14]** exception does not divest them of immunity because neither the "possession or control" nor "operation" elements are present in this case. Citing *Davies v. Barnes, 94 Pa. Commw. 145, 503 A.2d 93 (Pa. Commw. Ct. 1986)*, and *Burkey v. Auburn, 100 Pa. Commw. 110, 514 A.2d 273 (Pa. Commw. Ct. 1986)*, they contend that under Pennsylvania law, actual possession or control is necessary for the exception to apply; constructive possession or control will not suffice. (CCIU & Tury's Mot. Dismiss 10-11.) They further argue that the provision is inapplicable here because operation of the bus did not cause Plaintiffs' injuries. (CCIU & Tury's Mot. Dismiss 11-13.) According to Defendants, the Pennsylvania Supreme Court stated in *White v. School District of Philadelphia, 553 Pa. 214, 718 A.2d 778 (Pa. 1998)*, that the vehicle exception applies in situations where the act that caused the vehicle to move is directly connected to the injury at issue. (CCIU & Tury's Mot. Dismiss 13.) However, when the act complained of did not cause or was not directed at causing the vehicle to physically move, the vehicle exception is not triggered. (CCIU & Tury's Mot. Dismiss 12.)

Plaintiffs argue in response that Defendants should not receive immunity, though they "acknowledge that the present case raises the potential for immunity under the Tort Claims Act." (Pls.' Resp. to CCIU & Tury 7.) Plaintiffs claim that they have pled adequate **[*15]** facts in their complaint to implicate the motor vehicle exception, so CCIU and Tury should not be given immunity "at this early stage in the litigation." (Pls.' Resp. to CCIU & Tury 7, 9 n.1.) According to Plaintiffs, the motor vehicle exception may apply when the injury occurred when the vehicle was transporting the victim. (Pls.' Resp. to CCIU & Tury 7.) Additionally, CCIU did control the bus on which the injury took place, and Tury "admonished N.S. after [N.S.] reported Student X's conduct" to the police "because the CCIU controlled discipline on the bus." (Pls.' Resp. to CCIU & Tury 8.) Plaintiffs further argue that the cases that Defendants cited are not controlling "because they are factually distinguishable from the present case, i.e. none of them involve the factual scenarios wherein a student is attacked by another student while being transported to and from school on a school bus." (Pls.' Resp. to CCIU & Tury 8.)

After considering the arguments presented by the parties, the Court is unpersuaded that the vehicle exception applies to the facts of this case or that further discovery on this point is necessary before reaching this conclusion. As an initial matter, whether Defendants **[*16]** are immune is a question of state law, and this Court is thus required to "apply existing state law as interpreted by the state's highest court." *Koppers Co, Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1445 (3d Cir. 1996)*. The Pennsylvania Supreme Court has addressed the scope of the motor vehicle exception to the Tort Claims Act on several occasions, but the court's decision in *White* is most relevant to the particular facts of the case currently before this Court.

In White, the Pennsylvania Supreme Court considered the applicability of the motor vehicle exception in a case in which a minor plaintiff was struck by a vehicle after relying on a bus driver's signal to him that it was safe to cross the street. *718 A.2d at 779*. Before reaching its decision, the court distilled the following pattern from the cases in which Pennsylvania courts had interpreted the motor vehicle exception:

> [T]he Commonwealth Court generally has declined to apply the motor vehicle exception in cases where the act at issue was not directed toward causing physical movement of the vehicle. . . . Conversely, where an act causing movement of the vehicle or a part was directly connected with the injury at issue, the Commonwealth Court has found the exception applicable . . . .

*Id. at 780*. Applying this general pattern, **[*17]** the court concluded that the motor vehicle exception was inapplicable in the case before it because "quite clearly, the action complained of is not the physical operation of the school bus, but rather the driver's act of attempting to supervise the student to ensure his safety after he had alighted from the vehicle." *Id. at 781*.

Because the Pennsylvania Supreme Court has declined to expand the motor vehicle exception to encompass facts like those presented in this case, this Court is not permitted to extend it here. The facts in *White* are analogous to those presently before this Court. The conduct for which Plaintiffs fault CCIU and Tury, including Defendants' alleged failure to monitor the bus or ensure that proper safety measures were in place, is unrelated to the operation and physical movement of the bus. (See Am. Compl. ¶¶ 85, 105.) Plaintiffs have not alleged that Defendants were negligent in the way that they caused the physical movement of the vehicle. Instead, as in White, Plaintiffs fault conduct that is merely ancillary to the actual operation of the vehicle. Accordingly, as in White, the motor vehicle exception is not triggered by the facts of this case.

Though Defendants have raised **[*18]** several arguments to support their motion to dismiss the negligence claims against them, their argument under *White* is dispositive, and the Court does not reach their remaining contentions. However, the Court briefly considers Plaintiffs' arguments in opposition to Defendants' motion. Plaintiffs, citing White and *Love v. City of Philadelphia, 518 Pa. 370, 543 A.2d 531 (Pa. 1998)*, claim that the motor vehicle exception applies when the victim's injury occurred while the victim was being transported by the vehicle at issue. (Pls.' Resp. to CCIU & Tury 7.) But neither White nor Love supports Plaintiffs' broad proposition that the act of transporting the victim alone, without regard to the negligent act actually complained of, brings a case within the ambit of the motor vehicle exception. Indeed, though White and Love involved transportation of a victim, the Pennsylvania Supreme Court held in both that the motor vehicle exception did not apply. See *White, 718 A.2d at 781*; *Love, 543 A.2d at 531, 533*.

Plaintiffs' argument that discovery is needed in order to determine whether Defendants are entitled to immunity is similarly unconvincing. At the motion to dismiss stage, a court must ask whether the plaintiff has alleged "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the **[*19]** necessary element[s]" of their claim. *Phillips, 515 F.3d at 234* (quoting *Twombly, 550 U.S. at 556*). Here, even accepting all of Plaintiffs' allegations as true, it is clear from the face of the complaint that Plaintiffs have not stated a plausible claim for relief. They allege that M.S. was sexually harassed and assaulted by another student while being transported on a bus; they do not make any allegations that Defendants' actual operation of the vehicle caused Plaintiffs' injuries. At any stage in the proceedings, Plaintiffs' claims would not raise a plausible negligence or negligent infliction of emotional distress claim against Tury and CCIU. As discussed already, none of the exceptions to immunity, including the motor vehicle exception, are applicable to the facts alleged here. The Court is unpersuaded that discovery would lead to the unearthing of any evidence that can support Plaintiffs' position with respect to immunity.

Plaintiffs also suggest that, since an identical factual situation has not been addressed by the Pennsylvania courts, the case law that CCIU and Tury cite is inapposite. But this Court finds, as stated above, that *White* clearly presents an analogous, though not identical, set of facts. Factual identity is not a prerequisite **[*20]** to applying a general principle found in a case involving one set of facts to another case's set of different but similar facts. Plaintiffs state merely that a series of cases, including White, contain different facts than those present here. (Pls.' Resp. to CCIU & Tury 8.) However true that may be, Plaintiffs have not offered any reason, let alone a compelling one, for why this Court should depart from the general principle outlined by the Pennsylvania courts. Indeed, this Court's review of the relevant case law suggests that no such reason exists. Thus, while Plaintiffs may be correct in stating that no Pennsylvania court has considered a set of facts equivalent to the facts of this case, this Court predicts, based on the binding guidance provided by the Pennsylvania Supreme Court in White, that Pennsylvania courts would not apply the motor vehicle exception to facts like those presented here.

This Court is bound by the Pennsylvania Supreme Court's interpretation of Pennsylvania law. Accordingly, the Court finds that the motor vehicle exception to immunity is inapplicable in this case. Plaintiffs' claims against CCIU and Tury in Count III for negligence and V for negligent infliction **[*21]** of emotional distress are barred by the Political Subdivision Tort Claims Act and must be dismissed.

*2. Count IV — intentional infliction of emotional distress*

<u>a. CCIU</u>

Defendant CCIU argues that Plaintiffs' claims against it for intentional infliction of emotional distress are barred by the Tort Claims Act. (CCIU & Tury's Mot. Dismiss 13-14.) According to CCIU, under *Weaver v. Franklin County, 918 A.2d 194 (Pa. Commw. Ct. 2007)*, local agencies are immune from liability for intentional torts that do not fall within the eight enumerated exceptions to immunity. (CCIU & Tury's Mot. Dismiss 13-14.) Plaintiffs respond that CCIU's argument "is no better than the CCIU's prior arguments regarding immunity." (Pls.' Resp. to CCIU & Tury 9.) Plaintiffs argue specifically that Weaver is irrelevant to the facts of this case because Weaver, unlike the case before this Court, did not involve an exception to the immunity offered under the Tort Claims Act. (Pls.' Resp. to CCIU & Tury 9.)

The Court finds that Plaintiffs' claim for intentional infliction of emotional distress against CCIU is barred because, as CCIU argues, the agency is immune from tort liability under the Tort Claims Act. Plaintiffs do not dispute that CCIU is a public agency, and, though

Plaintiffs **[\*22]** argue otherwise, as discussed above, none of the enumerated exceptions to immunity are applicable here, including the motor vehicle exception. As stated in Weaver, "while there is a statutory abrogation of immunity of individual employees for intentional torts, this does not remove the immunity of the local agency." *918 A.2d at 200*; accord *42 Pa. Cons. Stat. §§ 8541*, *8550*. Defendant CCIU is therefore immune from tort liability for intentional infliction of emotional distress in this matter, and Plaintiffs' claim against CCIU in Count IV of the complaint must be dismissed.

b. Tury

Defendant Tury contends that Plaintiffs' claims against her in Count IV for intentional infliction of emotional distress should be dismissed because Plaintiffs have failed to plead sufficient facts to state a plausible claim for relief. (CCIU & Tury's Mot. Dismiss 14.) Specifically, Defendant Tury argues that Plaintiffs have pled no facts that can support a finding that Tury intentionally or recklessly acted in an extreme and outrageous manner and that her conduct caused Plaintiffs' injuries. (CCIU & Tury's Mot. Dismiss 16.) Plaintiffs respond that their factual allegation that Tury's failed to protect M.S. despite notice of Student X's misconduct is sufficient **[\*23]** for their intentional infliction of emotion distress claim to withstand a motion to dismiss. (Pls.' Reply to CCIU & Tury 10-11.)

A claim of intentional infliction of emotion distress requires the plaintiff to prove that the defendant engaged in "extreme and outrageous conduct intentionally or recklessly" that "cause[d] severe emotional distress [or bodily injury] to another." *Taylor v. Albert Einstein Med. Ctr., 562 Pa. 176, 754 A.2d 650, 652 (Pa. 2000)* (quoting *Restatement (Second) of Torts § 46* (1965)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)*; cf. *Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118, 121 (Pa. 1970)* (involving defendant who moved a corpse from an accident site, hid it in a garage, and buried it before the partially decomposed remains were discovered and returned to plaintiffs). A party's negligence or failure to act is insufficient to establish a claim for intentional infliction of emotional distress. *Jackson v. Sun Oil Co., 361 Pa. Super. 54, 521 A.2d 469, 471 (Pa. Super. Ct. 1987)*. Additionally, the Commonwealth Court of Pennsylvania has stated that to demonstrate intent, a plaintiff must establish that the defendant "desire[d] to cause the consequences of his act, or that he believes that the consequences are substantially certain to result **[\*24]** from it." *McNeal v. Easton, 143 Pa. Commw. 151, 598 A.2d 638, 641 (Pa. Commw. Ct. 1991)* (quoting *Restatement (Second) of Torts § 8A*).

In cases involving sexual harassment and claims of intentional infliction of emotional distress, the perpetrator is generally the only one who may be considered liable for an intentional infliction claim. See *Doe v. Allentown Sch. Dist., No. 06-cv-1926, 2007 U.S. Dist. LEXIS 70355, 2007 WL 2814587, at \*10 (E.D Pa. Sept. 24, 2007)* (citing *Andrews v. City of Phila., 895 F.2d 1469, 1487 (3d Cir.1990)*, a case in which failure to ameliorate a hostile work environment was insufficiently outrageous to support a claim against an employer for intentional infliction of emotional distress). In Doe, the district court concluded that employees of a school district could not be held liable for intentional infliction of emotional distress where they had allegedly concealed a series of sexual assaults perpetrated by a twelve-year-old boy against four first-grade boys because "[t]he plaintiffs do not allege that the defendants, even if they covered up the assaults, did so with the intention that more children would be injured." Id. The court explained, "These results are not surprising, because the tort is designed to provide compensation only for outrageous acts done for the purpose of causing emotional distress. In the context of sexual assault, typically the assailant alone intends to cause harm. Here, it was F.H. **[\*25]** who sought to harm his classmates." Id.

In the case presently before this Court, Plaintiffs allege that Tury failed to investigate allegations of sexual misconduct committed by Student X against N.S. Even viewing the amended complaint in the light most favorable to Plaintiffs, the Court cannot conclude that the Plaintiffs have alleged sufficient facts to support a plausible claim for intentional infliction of emotional distress. Plaintiffs' amended complaint is deficient along two key dimensions. First, Plaintiffs' allegation that Tury failed to investigate Student X's alleged misconduct amounts to a claim that she failed to act or was negligent, but such conduct does not fit within the category of extreme or outrageous behavior that the tort of intentional infliction of emotional distress was intended to comprise. While Tury's inaction may have contributed to preserving an environment in which Student X's alleged conduct could continue, this fact

cannot give rise to a claim against her under a theory of intentional infliction of emotional distress. Second, as in *Doe*, Plaintiffs allege that Tury should be held liable for actions committed by another individual: Student X. Even if Tury **[*26]** did fail to investigate the allegations against Student X, Plaintiffs have not alleged that she undertook—or failed to undertake—this course of conduct with the intent that M.S. would continue to suffer harm. Thus, Plaintiffs have failed to show that relief is plausible, and their claim for intentional infliction of emotional distress against Tury must be dismissed.

*5. Punitive damages*

Defendants also argue that Plaintiffs' demand for punitive damages against Tury must be dismissed. (CCIU & Tury's Mot. Dismiss 17.) But since Plaintiffs' tort claims against Barbara Tury in Counts III, IV, and V may not proceed for the reasons discussed above, Plaintiffs' claim for punitive damages also may not proceed, and the Court need not reach the merits of this portion of Defendants' motion.

*B. CCIU & Tury's Reply*

In a reply brief they later filed, CCIU and Tury set forth additional arguments that they had not included in their original brief in support of their motion to dismiss. They attempt to justify raising these new arguments by explaining that they had misunderstood Plaintiffs' amended complaint. (Reply Br. of Defs. CCIU & Barbara Tury Supp. Mot. Dismiss 1, Doc. No. 25.) According to Defendants, **[*27]** they initially believed Plaintiffs to be asserting "two Title IX claims based on two separate factual scenarios" and only "to reference *§ 1983* in passing," rather than as an independent basis for relief. (CCIU & Tury's Reply 1.) However, Defendants argue that, in Plaintiffs' response, Plaintiffs "claim[ed] that they are averring claims of violation of Title IX and *§ 1983*." (CCIU & Tury's Reply 1.) Defendants contend that they are raising the new points in their reply brief in response to the statements that appeared for the first time in Plaintiffs' response to Defendants' motion. (See CCIU & Tury's Reply 1.)

CCIU[2] makes three new arguments in its reply brief.

---

[2] Though both CCIU and Tury filed the reply brief, since the new arguments relate only to claims asserted solely against CCIU, the Court refers only to one Defendant, CCIU, in the following discussion.

First, CCIU argues that the Court should order a more definite statement regarding the basis of Plaintiffs' claims under *§ 1983*. (CCIU & Tury's Reply 1.) In the alternative, CCIU claims that, to the extent that Plaintiffs purport to assert claims under *§ 1983*, those claims should be dismissed. (CCIU & Tury's Reply 1.) Finally, though this portion of their brief is not a model of clarity, CCIU appears to argue for dismissal of Plaintiffs' Count I claims under Title IX. (CCIU & Tury's Reply 3.) The Court addresses each of these arguments below.

*1. Motion for a more* **[*28]** *definite statement*

Defendant CCIU "demand[s] a more specific statement regarding the basis for" Plaintiffs' *§ 1983* claim because "it is unclear what claim Plaintiffs are pursuing under *§ 1983*." (CCIU & Tury's Reply 1.) Defendant does not, however, argue that the factual pleadings are deficient: instead, it takes issue only with the legal theories presented in Counts I and II of Plaintiffs' amended complaint.

Based on the substance of Defendant's request, the Court construes CCIU's "demand" for a more specific statement as a motion under *Federal Rule of Civil Procedure 12(e)*, though CCIU does not specifically reference the rule and has not made a formal motion under it. *Rule 12(e)* provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Fed. R. Civ. P. 12(e)*. Under *Federal Rule of Civil Procedure 8(a)*, "[a] pleading that states a claim for relief" need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." In light of this liberal pleading standard, motions for a more definite statement are generally disfavored. See, e.g., *Murray v. Gencorp, Inc., 979 F. Supp. 1045, 1050 (E.D. Pa. 1997)*; *CH&H Pa. Props., Inc. v. Heffernan, No. 03-2349, 2003 U.S. Dist. LEXIS 14736, 2003 WL 22006799, at * 2 (E.D. Pa. Aug. 20, 2003)*. "The basis for granting . . . a motion [under *Rule 12(e)*] is unintelligibility, not lack **[*29]** of detail. As long as the defendant is able to respond, even if only with a simple denial in good faith . . . the complaint is deemed sufficient . . . ." *CH&H, 2003 U.S. Dist. LEXIS 14736, 2003 WL 22006799, at *2* (alterations in CC & H) (quoting *Sun Co. v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 374 (E.D. Pa. 1996))*.

At least one court in this district, citing *Federal Rule of Civil Procedure 12(g)*, has found that a *Rule 12(e)*

motion must be consolidated with all other *Rule 12* objections or defenses in the initial *Rule 12* motion. See *Okokuro v. Pa. Dep't of Welfare, No. 00-2044, 2000 U.S. Dist. LEXIS 15699, 2000 WL 1618480, at *3 (E.D. Pa. Oct. 31, 2000)* (holding that the defendant had waived its *Rule 12(e)* motion because defendant had already filed a motion under *Rule 12(b)(1)* and had not consolidated the motions as required by *Rule 12(g)*). However, in Thomas v. Independence Township, the Third Circuit stated that a defendant "*may* join" a *Rule 12(e)* motion with a motion for dismissal under *Rule 12(b)*. *463 F.3d 285, 301 (3d Cir. 2006)* (emphasis added). The Third Circuit further stated that "even when a defendant has not formally expressed the need for a definite statement, the district court has the discretion to order a more definite statement." Id. Thomas appears to adopt a more lenient view of *Rule 12(g)*, under which this Court may be permitted to consider Defendant's *Rule 12(e)* motion even though it raised it separately in a reply brief after it had already filed an initial motion for dismissal. However, since Defendant's motion lacks merit anyway, the Court need not decide the question of **[*30]** whether a *Rule 12(e)* motion may be raised after an initial *Rule 12(b)* motion was already filed.

Assuming without deciding that Defendant has properly raised a motion for a more definite statement, this Court's independent analysis of Plaintiffs' amended complaint does not permit a finding that Plaintiffs' document is so confusing, ambiguous, lengthy, or devoid of factual allegations that it warrants granting Defendant's request under *Rule 12(e)*. Although Plaintiffs could have stated which legal theories form the basis of their claims in Counts I and II with greater precision and clarity, their inartfully drafted complaint is not so vague or ambiguous that Defendants cannot prepare a response. As CCIU concedes, Plaintiffs specifically include a reference to *§ 1983* in both Counts I and II of their amended complaint, though Defendants opted not to address this "reference [made] . . . in passing" in the motion to dismiss (see CCIU & Tury's Reply 1). Plaintiffs' mention of *§ 1983* and Title IX was sufficiently clear to put Defendant on notice of the nature of Plaintiffs' alleged claims under *§ 1983*. The amended complaint meets *Rule 8(a)*'s liberal pleading standard, and Defendant had a sufficiently clear and fair understanding of Plaintiffs' claims **[*31]** to prepare a meaningful response.[3]

*2. Motion to dismiss Plaintiffs' claims under § 1983 in Counts I and II*

Defendant CCIU argue for the first time in its reply brief that Plaintiffs' claims in Counts I and II under *§ 1983* should be dismissed because Plaintiffs have not properly asserted a claim under this provision. (See CCIU & Tury's Reply 1.) As already stated above, according to CCIU, it had not realized that Plaintiffs were bringing an action under *§ 1983* and had instead concluded that the citation to the statute in Counts I and II of Plaintiffs' amended complaint was merely a passing reference. (See CCIU & Tury's Reply 1.) Defendant CCIU thought these two counts stated only claims under Title IX. (CCIU & Tury's Reply 1.) In its motion to dismiss, Defendant did not argue for dismissal of these two counts, either under a reading of the counts as raising claims solely under Title IX or as including claims under *§ 1983*.

Plaintiffs argue that since Defendant did not raise these arguments in the original motion to dismiss, the Court should not consider them now. (Pls.' Sur-Reply Br. Opp'n CCIU & Tury's Reply Br. 1, Doc. No. 29.) They further argue that Defendant's arguments lack merit because Plaintiffs did not **[*32]** cite *§ 1983* as an independent basis for relief, but rather only to the extent it was necessary to assert a violation of Title IX. (Pls.' Sur-Reply 1.)

Though a reply brief is not typically an appropriate place in which to raise new legal arguments, the Court will consider Defendant's contentions with respect to the purported claims under *§ 1983* in the interest of reaching an expeditious resolution of the matter before the Court. Defendant's arguments concern essential elements of Plaintiffs' cause of action and would likely be raised again later in the litigation if the Court deferred considering the issue now. See *Kimmel v. Cavalry Portfolio Servs., LLC, No. 10-680, 2011 U.S. Dist. LEXIS 55959, 2011 WL 2039049, at *3 (E.D. Pa. May 25, 2011)*. Moreover, Plaintiffs will not be prejudiced by the Court's consideration of the additional contentions because Plaintiffs had an adequate opportunity to respond to Defendant's claims in their sur-reply brief.[4]

---

[3] Additionally, Plaintiffs specifically state in their sur-reply that they did not attempt to cite *§ 1983* as an independent basis of relief, but rather they referenced it to the extent necessary to assert a violation of Title IX. (Pls.' Sur-Reply Br. Opp'n CCIU &

Tury's Reply 1, Doc. No. 29.) Plaintiffs have therefore provided the clarification that Defendant seeks, though, as stated above, the amended complaint was sufficiently clear without this further explanation.

[4] Defendant CCIU concedes that Plaintiffs' amended complaint included clear references to *§ 1983*. (CCIU & Tury's Reply 1.)

2016 U.S. Dist. LEXIS 190850, *32

Before reaching the merits of Defendant's motion, however, a point of clarification is necessary. In Count I of their amended complaint, Plaintiffs state that they "can recover for the damages inflicted upon them by the [CCIU] and Twin Valley School District pursuant to *Title IX of the Education Amendments of 1972* and *42 U.S.C. § 1983*." (Am. Compl. ¶¶ 60, 63.) In Count II, they allege that they can recover pursuant to Title IX and *§ 1983* for the **[*33]** injuries inflicted by CCIU. (Am. Compl. ¶¶ 74, 76.) Under each of these two counts, Plaintiffs include language asserting that Defendant "can be sued in a private action under Title IX." (Am. Compl. ¶¶ 61-62, 75.) Based on the language in each of the first two counts, the Court interprets Plaintiffs' complaint as attempting to assert two separate sets of claims in Counts I and II: a Title IX claim and a claim under *§ 1983* for a violation of Title IX.[5] The following discussion concerns only Defendant's motion to dismiss the set of claims under *§ 1983* for a violation of Title IX and does not relate to Plaintiffs' separate claim for relief under Title IX.

After considering the parties' arguments, the Court agrees with Defendant that Plaintiffs' *§ 1983* claims must be dismissed. However, the Court arrives at this conclusion based on reasons that differ slightly from those set forth in Defendant's reply brief. Specifically, Plaintiffs' claims under *§ 1983* cannot proceed because *§ 1983* does not offer a route to recovery for a violation of Title IX.

Although the Third Circuit has not expressly addressed whether a Title IX violation is actionable under *§ 1983*, it

---

Accordingly, the Court is unpersuaded by Defendant's contention that Plaintiffs' amended complaint did not appear to raise any claims under *§ 1983*. Defendant could have addressed the *§ 1983* claims in the original motion. However, it chose not to file a more comprehensive brief, concluding that Plaintiffs' references to *§ 1983* were made only in passing. (CCIU & Tury Reply 1.) It is incumbent on parties to file thorough and complete briefs. They may not expect leniency for their imprudent tactical decisions or their failure to include arguments that they had available to them.

[5] Confusingly, Plaintiffs state in a response brief to Defendant Krapf's motion to dismiss that Count I states only a Title IX claim and Count II a retaliation claim under Title IX. (Pls.' Br. Opp'n Def. Krapf's Mot. Dismiss 11, Doc. No. 26-2.) This statement contradicts other statements in their responsive filings with respect to CCIU and Tury's motion to dismiss, in which Plaintiffs acknowledge having raised Title IX claims under *§ 1983*. Based on Plaintiffs' amended complaint, however, it is clear to the Court that Plaintiffs have raised both sets of claims.

addressed a similar question with respect to *Section 504 of the Rehabilitation Act* **[*34]** and held that *§ 1983* does not provide a remedy for a violation of *Section 504*. *A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 805-06 (3d Cir. 2007)*. As the court stated, the availability of a comprehensive judicial remedy under a particular statutory scheme establishes that Congress did not intend a violation of that statutory scheme to be remedied through *§ 1983*; instead, recovery is available only under the specific statute. See id. ("Following *Rancho Palos Verdes [v.Abrams, 544 U.S. 113, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005)]*, we will ordinarily infer that when a private, judicial remedy is available for alleged statutory violations, this remedy is intended to be exclusive."). The A.W. court concluded that since there is an implied right of action and a comprehensive enforcement scheme offered under *Section 504*, *§ 504* is not actionable under *§ 1983*. Id.

The A.W. court was not considering whether a Title IX violation could be asserted under *§ 1983*, but the court discussed Title IX in arriving at its decision regarding *Section 504*. According to the court, "[t]he Rehabilitation Act adopts the scheme of 'remedies, procedures, and rights set forth in *Title VI of the Civil Rights Act of 1964*"; Title IX offers a remedial scheme that "is almost identical to the *Title VI* scheme." *Id. at 803-05*. Additionally, the Supreme Court has held that there is an implied right of action under Title IX. **[*35]** See *Cannon v. Univ. of Chicago, 441 U.S. 677, 709, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979)*. Based on the availability of this judicial remedy under Title IX and considering the Third Circuit's discussion of the provision in A.W., this Court concludes that *§ 1983* does not offer a remedy for a violation of Title IX. Accord *A.W., 486 F.3d at 805-06* (citing with approval the Second Circuit's decision in *Bruneau v. South Kortright Cent. Sch. Dist., 163 F.3d 749 (2d Cir. 1998)*, in which the court held that a plaintiff may not pursue a claimed violation of Title IX under *§ 1983* but rather only under Title IX). Plaintiffs' claims against CCIU under *§ 1983* must therefore be dismissed. However, once again, the Court notes that Plaintiffs' claims in Count I and II for a violation of Title IX are unaffected by this Court's granting Defendant's motion with respect to *§ 1983*, since Title IX provides an independent and separate cause of action.

*3. Motion to dismiss Plaintiffs' claims under Title IX in Count I*

Defendant CCIU also appears to argue that Plaintiffs'

Title IX claims should be dismissed, referring only to Plaintiffs' allegation regarding monitoring in the school cafeteria and not any of Plaintiffs' other numerous factual allegations. Its offered support for this contention is brief, consisting only of the conclusory statement that "[t]he Complaint does not . . . supply a basis for liability under **[\*36]** Title IX" and a citation to _Gebser v. Lago Vista Independent School District, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)_, and to _Blunt v. Lower Merion School District, 826 F. Supp. 2d 749 (E.D. Pa. 2011)_, without any discussion of either of these cases. Defendant CCIU also has not identified which of Plaintiffs' claims under Title IX it moves to dismiss, but, since it makes no reference to retaliation, the apparent basis of Plaintiffs' claims in Count II, the Court construes CCIU's motion as applying only to Plaintiffs' Title IX claim in Count I.

Plaintiffs argue that Defendant had not previously moved for dismissal of Plaintiffs' Title IX claims, so Defendant may not argue for their dismissal now. (Pls.' Sur-Reply 2.) Additionally, Plaintiffs maintain that they have pled sufficient facts under _Davis v. Monroe County Board of Education, 526 U.S. 629, 645, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)_, to withstand a motion to dismiss their claims under Title IX. (Pls.' Sur-Reply 2-3.)

As an initial matter, the Court will consider CCIU's motion to dismiss Plaintiffs' claim for the same reasons mentioned above, though again must note that Defendant has not offered a compelling reason for its failure to raise these arguments at the appropriate time, specifically, in its initial motion to dismiss. But since Plaintiffs are not prejudiced by the Court's consideration of Defendant's arguments, and since Defendant's motion lacks merit anyway, the Court will briefly **[\*37]** address CCIU's argument with respect to Plaintiffs' Title IX claims.

Title IX prohibits sex discrimination by recipients of federal education funding. The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." _20 U.S.C. § 1681(a)_. As stated above, Title IX is enforceable through an implied private right of action. _Cannon, 441 U.S. at 709_. Generally, defendants may only face liability under Title IX for their own misconduct. _Davis, 526 U.S. at 643-45_. However, a plaintiff may, under limited circumstances, state a colorable claim against a funding recipient for deliberate indifference to one student's sexual harassment of another student. _Id._ ("If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.").

In _Davis_, a fifth-grade student endured continued sexual harassment—including "numerous acts of objectively offensive **[\*38]** touching"—over a period of five months. _Id. at 653_. Although the harassment was reported to classroom teachers, the school principal, and the physical education teacher, the school board "made no effort whatsoever either to investigate or to put an end to the harassment," even after the student-aggressor pled guilty to criminal sexual misconduct. _Id. at 654_. The Supreme Court held that, under these particular circumstances, the school board's deliberate indifference to student harassment supported Title IX liability.

Defendants bear the burden of showing that no claim has been presented. See _Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)_. Here, CCIU has not satisfied its burden, and the Court holds that Plaintiff has pled sufficient facts to withstand a motion to dismiss. As in _Davis_, in the case before this Court, N.S. alleges that her son was the victim of repeated acts of sexual harassment by Student X over a several-month period of time. The alleged misconduct consisted not only of the initial offensive sexual contact on the bus, but also of verbal abuse that later occurred in the school cafeteria and school store. Plaintiffs allege that N.S. brought the abuse to the attention of the school, including by notifying M.S.'s behavioral specialist **[\*39]** and by later seeking an audience with the school principal. The harassment allegedly continued even after N.S. notified these individuals. Plaintiffs, therefore, have pled sufficient facts that may give rise to a conclusion that Defendant had actual knowledge of the misconduct and the power to correct the misconduct, but acted with deliberate indifference by making no effort to investigate or stop the harassment. Though the _Davis_ Court applied a pre-Iqbal standard in assessing the petitioner's complaint, here, even under a more stringent pleading standard, Plaintiffs have pled enough facts to raise a right to relief above the speculative level, and thus their claim under Title IX in Count I of their complaint may withstand a motion to dismiss. Defendant's motion to dismiss this claim is denied.

*B. Defendant Twin Valley's motion to dismiss*

*1. Count I — Title IX*

Twin Valley argues that Plaintiffs' claim against it under Title IX in Count I of their complaint should be dismissed. Twin Valley raises two arguments in support of this motion, which the Court addresses in turn.

a. The IDEA offers Plaintiffs' their exclusive remedy

Twin Valley argues that Plaintiffs have failed to exhaust administrative **[*40]** remedies available under the IDEA before commencing this action, so this Court may not consider their claims. (Mem. Law Supp. Twin Valley's Mot. Dismiss 10, Doc. No. 17.) A necessary precursor to Twin Valley's contention is that, since M.S. is eligible for special education services under the IDEA, he may only bring his action under that statutory scheme, and not under *§ 1983* or Title IX. However, this argument is defective, and the Court must reject Defendant's argument.

The underlying purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." *20 U.S.C. § 1400(c)*. In furtherance of the IDEA's goals, the act requires any state or local educational agency or state agency that receives federal assistance to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by those agencies. Id. *§ 1415(a)*. Children and parents may examine records, obtain independent educational evaluations, and present complaints "with respect **[*41]** to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. *§ 1415(b)*. The IDEA requires states to give parents who file a complaint an opportunity for an impartial due process hearing. Id. *§ 1415(f)*. If the hearing is initially conducted at the local level, any party aggrieved by the findings and decision is permitted to appeal to the state educational agency to seek review. Id. *§ 1415(g)*. Under the IDEA, a party aggrieved by the findings and decision made under these due process procedures may bring a civil action in a state court or federal district court. Id. *§ 1415(i)*.

In *Smith v. Robinson, 468 U.S. 992, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984)*,[6] the Supreme Court held that the IDEA was the exclusive avenue through which a disabled child who qualified for the IDEA could obtain relief. *Id. at 1013*. In response to the Supreme Court's decision in Smith, Congress amended the IDEA in 1986 to include *§ 1415(l)*, which superseded Smith by providing that the IDEA is not the exclusive remedy for a disabled child who qualifies for the IDEA's protections. See The *Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, 100 Stat. 796, 797*; accord *Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 763 (3d Cir. 1995)*. Section *§ 1415(l)* specifically states as follows:

> Nothing in this chapter shall be construed to restrict **[*42]** or limit the rights, procedures, and remedies available under the Constitution, the *Americans with Disabilities Act of 1990* [*42 U.S.C.A. § 12101 et seq.*], *title V of the Rehabilitation Act of 1973* [*29 U.S.C.A. § 791 et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under *subsections (f)* and *(g)* shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

*20 U.S.C. § 1415(l)*. The plain language of this provision clearly indicates that eligibility for IDEA does not preempt actions seeking relief for violations of rights provided by other federal statutes. Accord *Susan N., 70 F.3d at 763* (explaining that *§ 1415(l)* "was . . . enacted to 'reaffirm, in light of [*Smith*], the viability of *section 504*, *42 U.S.C. § 1983*, and other statutes as separate vehicles for ensuring the rights of handicapped children.'" (alterations in Susan N.) (quoting *W.B. v. Matula 67 F.3d 484, 493-94 (3d Cir. 1995))*. But where the action seeks relief that is also available under the IDEA, the plaintiff must first exhaust the administrative procedures established by the IDEA.

As stated already, Title IX provides that "[n]o person in the United States shall, on the basis of sex, **[*43]** be excluded from participation in, be denied the benefits of,

_____

[6] Smith technically involved the *Education of the Handicapped Act* ("EHA"), which has since been revised and renamed as the IDEA. In its discussion of Smith, this Court will refer to the EHA as the IDEA, as they are effectively the same for the purposes of this discussion. Cf. *Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 763 (3d Cir. 1995)* (using "IDEA" in place of "EHA" in the course of discussing Smith).

or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *20 U.S.C. § 1681(a)*. The plain language of Title IX's provisions indicates that it provides a remedy for a violation of a set of rights entirely separate from the rights protected by the IDEA, though both involve federal funding to educational programs and activities. Specifically, Title IX provides an enforcement mechanism to protect against discrimination on the basis of sex, whereas the IDEA protects the rights of children with disabilities. Although M.S. is an individual who is protected under the IDEA (see Am. Compl. ¶ 1), this fact is incidental to the claims that Plaintiffs assert in their complaint. The crux of Plaintiffs' allegations is that the several Defendants named in the complaint failed to protect M.S. from sexual harassment and abuse perpetrated by another student who was under their supervision. (See Am. Compl. ¶ 26.) Qualifying for the IDEA's protections does not preclude M.S. and his mother from seeking remedies to which they may be entitled for violations of their other legal rights.

Since Title IX does not **[*44]** require administrative exhaustion, see *Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009)*, Defendant's argument with respect to Plaintiffs' failure to exhaust administrative remedies is of no legal moment. Accordingly, Plaintiffs' failure to exhaust administrative remedies does not provide a basis for dismissal, and the Court denies Defendant's motion to dismiss Count I on this ground.

### b. Plaintiffs' Title IX claim lacks merit

Defendant also argues, however, that Plaintiff's Title IX claim should be dismissed because it lacks merit. Specifically, Twin Valley argues that it was only informed of the alleged misconduct after it had already occurred, and thus Twin Valley cannot be found liable. (Twin Valley's Mot. Dismiss 11-12.) Additionally, Twin Valley argues that Plaintiff cannot establish that the school district's initial refusal to have the students ride separate buses establishes that Twin Valley was deliberately indifferent as required to establish Title IX liability. (Twin Valley's Mot. Dismiss 12.)

As stated already, a plaintiff seeking to bring a claim against a funding recipient for misconduct committed by another must establish that the funding recipient acted with deliberate indifference. *Davis, 526 U.S. at 643-45*. The Supreme Court stated in Davis **[*45]** that this deliberate indifference must "at a minimum, cause

students to undergo harassment or make them liable or vulnerable to it." Id. Additionally, the Court noted that the harassment must have occurred in an environment over which the funding-recipient exercised some degree of control. Id. ("Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action.").

The Court agrees with Twin Valley that Plaintiffs' Title IX claim does not state a plausible claim to relief against Twin Valley. The misconduct alleged in the complaint took place in two settings: on M.S.'s bus and later in the school's gymnasium, cafeteria, and store. Plaintiffs allege that Twin Valley had control of M.S.'s bus, but they have pled no facts supporting a finding that Twin Valley had control over the school gymnasium, cafeteria, or store. Thus, only the misconduct that occurred on the bus can be a proper potential basis for Twin Valley's liability. However, Plaintiffs allege that N.S. kept M.S. off the **[*46]** bus after she learned of Student X's alleged misconduct and only then informed Twin Valley of the misconduct. Twin Valley then offered to have an aide sit with M.S. on the bus, but informed N.S. that they could not provide separate transportation for M.S. Following this exchange, N.S. withdrew M.S. from the bus service altogether—and therefore, from under Twin Valley's control. Twin Valley later was able to find a separate bus that M.S. could use.

These facts cannot give rise to a plausible claim for relief against Twin Valley. As soon as Twin Valley was notified of the alleged misconduct, the district offered a possible and reasonable accommodation, albeit one that N.S. found to be an imperfect solution. Later, Twin Valley offered an additional solution when it found another bus that M.S. could use. Thus, Plaintiffs' complaint cannot give rise to a finding that Twin Valley was deliberately indifferent since it provided a reasonable solution in response to Plaintiffs' complaints. Moreover, the alleged misconduct on the bus occurred before Twin Valley was notified of the misconduct; at the same time that Twin Valley was notified, M.S. had also stopped riding the bus. There are no further **[*47]** allegations of sexual misconduct on the bus following this—as indeed there could not be, since M.S. was no longer a passenger. Because no misconduct occurred after Twin Valley had notice of the harassment *and* when M.S. was still riding the bus and under their control, Plaintiffs' claims against Twin Valley under Title IX cannot proceed. Accordingly, Twin Valley's motion to

dismiss Plaintiffs' claim against it in Count I is granted.

### 2. Counts 1 — § 1983

Defendant Twin Valley argues that Plaintiffs' claim under § 1983 should be dismissed because Plaintiffs' exclusive remedy is under the IDEA. But as stated above, Plaintiffs are not attempting to enforce their rights under the IDEA, but rather under Title IX. Defendant's argument thus lacks without merit. However, as discussed already with respect to CCIU's motion, § 1983 does not offer a route to recovery for alleged violations of Title IX; instead, a plaintiff must bring a claim for a violation of Title IX only under that statutory scheme. C.f. *A.W., 486 F.3d at 805-06.* Plaintiffs' claim against Twin Valley under § 1983 in Count I must therefore be dismissed.

### 3. State law claims in Counts III, IV, and V

Twin Valley also moves to dismiss Plaintiffs' state law claims against it for the **[*48]** same reasons that CCIU raised in its motion to dismiss. (Twin Valley's Mot. Dismiss 13.) The Court agrees with Twin Valley that Plaintiffs' state law claims against Twin Valley in Counts III, IV, and V may not proceed. Plaintiffs' claims against Twin Valley are identical to those against CCIU, and Twin Valley, like CCIU, is a local agency. The discussion above with respect to CCIU's motion to dismiss Plaintiffs' state law claims is, accordingly, equally applicable to Twin Valley's motion, and the Court need not repeat that discussion here. Therefore, Plaintiffs' claims against Twin Valley under state law are dismissed.

### C. Defendant Krapf's motion to dismiss

Krapf argues that some of Plaintiffs' claims against it should be dismissed for several reasons. The Court considers each in turn below.

### 1. Count III — negligence

Defendant Krapf argues that Paragraph 85(g) of the portion of Plaintiffs' amended complaint in which they assert a negligence claim against Krapf should be dismissed because "Plaintiffs sets [*sic*] forth general amorphous allegations of negligence without the required specificity." (Br. Supp. Mot. Dismiss of Def.

Krapf 16, Doc. No. 19-1.) In Paragraph 85(g), Plaintiffs state **[*49]** that Defendant was negligent for "[a]ny other instances that are revealed during the course of discovery." (Krapf's Mot. Dismiss 16.) Krapf argues that this "general allegation" does not provide fair notice of Plaintiffs' negligence claim and the grounds upon which it rests. (Krapf's Mot. Dismiss 17.) Krapf does not, however, take issue with the other stated bases for Plaintiffs' negligence claim in Count III.

Defendant's motion with respect to Paragraph 85(g) is denied. By declaring that Defendant may be negligent for other conduct that may be revealed through discovery, Plaintiffs appear merely to be stating that they may request leave to amend their complaint pursuant to *Federal Rule of Civil Procedure 15* if new and relevant information comes to light through discovery. This paragraph does not state the basis of any current claim that Plaintiffs are asserting and thus dismissal under *Rule 12(b)(6)* is not proper.

### 2. Count IV — intentional infliction of emotional distress

Krapf argues that Plaintiffs' claims in Count IV for intentional infliction of emotional distress should be dismissed for a number of different reasons, including that Plaintiffs have failed to plead sufficient facts to establish the component elements of the tort. (See **[*50]** Krapf's Mot. Dismiss 13-14.) Plaintiffs raise similar arguments in opposition to Krapf's motion as they did in their response to Tury's motion, and the Court finds their arguments equally unpersuasive with respect to Krapf. The Court largely incorporates its discussion with respect to the intentional infliction of emotional distress claims against Tury. Plaintiffs have alleged that Krapf failed to properly monitor the students present on the bus, install proper security measures, or provide M.S. with an appropriate seat companion. Plaintiffs' allegations cannot form a basis for recovery under an intentional infliction of emotional distress claim. Krapf's alleged conduct may have been negligent, but negligence is not sufficiently extreme or outrageous to be actionable under a claim for intentional infliction of emotional distress. As was true of Plaintiffs' claims regarding Tury, Plaintiffs essentially argue that Krapf should be held liable for actions committed by another individual: Student X. But even if Krapf had been negligent, Plaintiffs have alleged no facts that establish that Krapf undertook any course of conduct intending to cause M.S. or N.S. harm. See *Doe v. Allentown School District, 2007 U.S. Dist. LEXIS 70355, 2007 WL 2814587, at *10 (E.D Pa. Sept. 24, 2007)* (stating that

the **[\*51]** tort of intentional infliction of emotional distress "is designed to provide compensation only for outrageous acts done for the purpose of causing emotional distress . . . typically [where] the assailant alone intends to cause harm"). Plaintiffs have therefore failed to show that relief is plausible, and their claim for intentional infliction of emotional distress against Krapf must be dismissed.

*3. Count V — negligent infliction of emotional distress*

Krapf also argues that N.S.'s claim for negligent infliction of emotional distress should be dismissed because Plaintiffs have not demonstrated any of the four factual scenarios necessary to state a claim under this tort. Specifically, N.S. has not alleged that Krapf owed her any contractual or fiduciary duty, that she herself suffered any physical impact, that she was in the zone of danger and at risk of immediate physical injury, or that she had witnessed an injury to M.S. (Krapf's Mot. Dismiss 15-16.) Plaintiff N.S. responds that "[i]f the [Pennsylvania] Supreme Court has ruled that a special duty extends from parties handling corpses to the family members the deceased, there are ample grounds for finding a duty towards the mother of a special **[\*52]** needs student from the parties responsible for the safety of his transportation to school." (Pls.' Br. Opp'n Krapf's Mot. Dismiss 15, Doc. No. 26-2.) N.S. does not appear to contest Krapf's arguments that she did not herself suffer a physical impact, was not in the zone of danger, and did not herself witness the injury to M.S. Accordingly, the Court considers only whether a special duty or relationship provides a basis for a negligent infliction of emotional distress claim in this case.

As an initial matter, it is unclear whether under Pennsylvania law, a claim for negligent infliction of emotional distress arising from a special contractual or fiduciary duty even exists, though both parties incorrectly suggest that the Pennsylvania courts have definitively recognized such a tort. Although the Pennsylvania Superior Court has found that a negligent infliction of emotional distress claim can be based on the breach of a contractual or fiduciary duty, e.g., *Doe v. Phila. Cmty. Health Alternatives AIDS Task Force, 2000 PA Super 6, 745 A.2d 25, 27 (Pa. Super. Ct. 2000)* aff'd, *564 Pa. 264, 767 A.2d 548 (2001)*, the Pennsylvania Supreme Court's decision in *Toney v. Chester County Hospital, 614 Pa. 98, 36 A.3d 83 (Pa. 2011)*, calls into the doubt the viability of such a claim in the instant case. In Toney, the defendants were doctors who had performed an ultrasound on the plaintiff and informed

her **[\*53]** that the results were normal. *Id. at 85.* The plaintiff, however, delivered a child who had "several profound physical deformities." Id. This allegedly caused her extreme emotional distress, and she claimed that the doctors were liable under a theory of negligent infliction of emotional distress because they had failed to properly read the ultrasound. Id.

The Supreme Court was evenly divided on the issue of whether a cause of action for negligent infliction of emotional distress was available for a case involving a negligent breach of a contractual or fiduciary duty, absent a physical impact or injury. Three justices held that such a claim was unavailable under existing Pennsylvania law. *Id. at 84.* Those justices who answered the question in the affirmative wrote that they would limit the reach of negligent infliction claims arising from a contractual or fiduciary duty "to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach. . . . [T]he special relationships must encompass an implied duty to care for the plaintiff's emotional well-being." *Id. at 95.* The justices declined to create an exhaustive list of qualifying relationships, but **[\*54]** stated that "some relationships, including some doctor-patient relationships, will involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm." Id. The justices, applying this reasoning, concluded that "[i]n this case, involving the very sensitive and emotionally charged field of obstetrics . . . Defendants had . . . an implied duty to care for Plaintiff's emotional well-being." Id.

Following the Pennsylvania Supreme Court's decision, Pennsylvania state and federal courts have allowed negligent infliction of emotional distress claims based on special relationships to proceed in only limited circumstances. Qualifying special relationships have included those between doctors and their patients or between an adoption agency and adoptive parents. E.g., *Nicholson-Upsey v. Touey, No. 09110425, 2013 Phila. Ct. Com. Pl. LEXIS 517, 2013 WL 232116 (C.P. Phila. May 6, 2013)* (involving doctor—patient relationship); *Madison v. Bethanna, Inc., No. 12-cv-01330, 2012 U.S. Dist. LEXIS 71738, 2012 WL 1867459 (E.D. Pa. May 23, 2012)* (involving relationship between adoption agency and adoptive parents). Courts have otherwise declined to extend the tort further. See *Hershman v. Mulhenberg Coll., 17 F. Supp. 3d 454, 460 & n.8 (E.D. Pa. 2014)* (listing cases in which liability for negligent infliction of emotional distress based on a special relationship has not **[\*55]** been found, including

in cases involving employer—employee, lender—borrower, casino—patron, airline—passenger, or contractor—building-owner relationships).

Based on the guidance provided by this case law, this Court does not believe that Pennsylvania courts would extend liability for the negligent infliction of emotional distress tort to a case involving a relationship between a bus company and a parent whose child received transportation services from the bus company. The three justices in <u>Toney</u> who wrote that a special relationship could form the basis of liability for negligent infliction of emotional distress were clear that they thought it applied only in limited contexts, specifically cases in which a defendant had a special relationship with the *plaintiff* encompassing an implied duty to the *plaintiff* to care for the *plaintiff's* emotional well-being. Courts since the <u>Toney</u> decision have been reluctant to find that a qualifying special relationship exists. Here, N.S. has pled no facts suggesting that the transportation company owed *her* any duty to care for *her* emotional well-being. Though it is possible that the company had such a duty to M.S., the facts with respect to N.S. simply **[*56]** do not fall within the limited circumstances contemplated by the affirming Toney justices or subsequent Pennsylvania courts and thus cannot permit an extension of liability in this case. Because N.S. has not pled facts supporting a conclusion that Krapf owed N.S. any special duty to care for her emotional well-being, the Court concludes that her claim may not proceed and must be dismissed. However, since Krapf has not raised any objections to M.S.'s claim of negligent infliction of emotional distress, M.S's claim in Count V against the company remains unaffected.

## 4. Statute of limitations

Defendant states that "part of Plaintiffs' claims and/or damages may be barred by the applicable statute of limitations" because there is a two-year statute of limitations for actions to recover damages for injuries caused by wrongful or negligent acts. (Krapf's Mot. Dismiss 17.) Due to Krapf's noncommittal language, it is unclear whether Krapf intends to raise the statute of limitations as a basis for dismissal pursuant to *Rule 12(b)(6)*, but the Court will construe this argument as attempting to raise an additional argument for dismissal and will deny the motion.

Even assuming that the applicable statute of limitations **[*57]** was two years for both M.S.'s claims[7] and N.S.'s claims, the statute of limitations had not expired at the time Plaintiffs filed their original complaint. Plaintiffs allege that the conduct underlying their action began on October 23, 2015. (Am. Compl. ¶ 26.) Though Plaintiffs' filed their amended complaint on December 30, 2015, they filed their original complaint on October 21, 2015. The amended complaint merely corrected the name of an incorrectly identified Defendant (Krapf) and was filed within the applicable *Rule 4(m)* period. See *Fed. R. Civ. P. 15(c)(1)(C)*. Additionally, Krapf had actual notice of the action, since Krapf responded to Plaintiffs' original complaint by filing a motion to dismiss, and, in its first motion to dismiss, Krapf itself identified Plaintiffs' error with respect to the party's name. See id. Thus, under *Federal Rule of Civil Procedure 15(c)*, Plaintiffs' amended complaint relates back to their original complaint and to the original filing date of October 21, 2015, which was within the two-year period. See, e.g., *Glover v. Fed. Deposit Ins. Corp., 698 F.3d 139, 145 (3d Cir. 2012)* ("Where an amendment relates back, *Rule 15(c)* allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality."). Defendant's motion **[*58]** based on the alleged untimeliness of Plaintiffs' complaint is denied.

## 5. Punitive damages

Defendant Krapf also argues that all of Plaintiffs' claims against it for punitive damages in Counts III, IV, and V must be dismissed because Plaintiffs have not pled sufficient facts to support a finding that Krapf acted in an outrageous manner by exhibiting evil motive or reckless indifference to others' rights. (Krapf's Mot. Dismiss 9-10.) Since the Court dismissed Plaintiffs' claims in Count IV for intentional infliction of emotional distress and N.S.'s claim in Count V for negligent infliction of emotional distress, the following discussion pertains only to punitive damages potentially available with respect to Plaintiffs' remaining claims against Krapf.

Pennsylvania has adopted the Restatement (Second) of Torts' standard on imposing punitive damages, which provides that "[p]unitive damages may be awarded for conduct that is outrageous because of the defendant's

---

[7] Since M.S. is still a minor, the statute of limitations with respect to his claims is tolled and does not begin to run until he turns eighteen years old. *42 Pa. Cons. Stat. § 5533(b)(1)*.

evil motive or his reckless indifference to the rights of others." *Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (Pa. 1984)* (quoting *Restatement (Second) of Torts § 908(2)* (1979)). Punitive damages may be imposed only where conduct was malicious, wanton, reckless, willful, or oppressive. *Id. at 748*. "[O]ne must look to 'the act itself together with all **[*59]** the circumstances including the motive of the wrongdoers and the relations between the parties . . . .'" Id. (alteration in Feld) (quoting *Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (Pa. 1963))*. A court "should not look at the end result . . . ; rather, the court should examine the actor's conduct." Id.

In the instant case, Plaintiffs have not pled sufficient facts to support a plausible claim for punitive damages. With respect to Krapf, Plaintiffs have alleged only that Defendant did not have a security camera installed on the bus and did not sufficiently monitor the bus to ensure student safety. (Am. Compl. ¶¶ 27-28.) Plaintiffs also state that Krapf's "actions in this case shock the conscience and are so outrageous that the imposition of punitive damages is appropriate." (Am. Compl. ¶¶ 91, 102, 112.) However, the bare statements that Krapf's actions shock the conscience and were outrageous are legal conclusions, and this Court will accordingly disregard them in evaluating the sufficiency of Plaintiffs' factual allegations. Omitting Plaintiffs' legal conclusions from the Court's consideration leaves only the two statements that Krapf did not have a security camera on the bus and that its employees did not adequately monitor the bus. **[*60]** While these deficiencies, if true, could potentially amount to negligent conduct, neither of these factual allegations can plausibly support a conclusion that Defendant's conduct was malicious, wanton, reckless, willful, oppressive, or evil. Although Plaintiffs write at length about the "extent of the harm to M.S. and N.S. resulting from Krapf's failure to act," (Pls.' Br. Opp'n Krapf's Mot. Dismiss 10), the Pennsylvania Supreme Court has been clear that courts must not consider the end result in assessing whether punitive damages are available, but rather, look only to the actor's conduct. Plaintiffs' complaint does not raise a plausible right to punitive damages, so Krapf's motion is granted with respect to the remaining claims for punitive damages.

IV. Conclusion

For the reasons discussed above, it is hereby ordered as follows:

1. Defendants CCIU and Barbara Tury's motion to dismiss (Doc. Nos. 16 & 25) is GRANTED in part and DENIED in part.

a. Plaintiffs' claims under state law in Counts III, IV, and V against CCIU are dismissed, as are Plaintiffs' claims against CCIU in Counts I and II under *§ 1983*. However, their claims against CCIU under Title IX in Counts I and II may proceed.

b. All of **[*61]** Plaintiffs' claims against Barbara Tury are dismissed.

2. Defendants CCIU and Barbara Tury's motion for a more definite statement (Doc. No. 25) is DENIED.

3. Defendant Twin Valley School District's motion to dismiss (Doc. No. 17) is GRANTED. All of Plaintiffs' claims against Twin Valley are dismissed.

4. Defendant George Krapf, Jr. and Sons, Inc.'s motion to dismiss (Doc. No. 19-1) is GRANTED in part and DENIED in part.

a. Plaintiffs' claims in Count IV for intentional infliction of emotional distress are dismissed.

b. N.S.'s claim in Count V for negligent infliction of emotional distress is dismissed.

c. However, M.S.'s claims in Count V and both Plaintiffs' claims in Count III may proceed.

d. Krapf's motion with respect to Plaintiffs' claims for punitive damages in Counts III and V is granted, and Plaintiffs' claims for punitive damages are dismissed.

5. Pursuant to *Federal Rule of Civil Procedure 15* and in the interest of justice, Plaintiffs may submit a second amended complaint resolving any deficiencies identified above no later than Monday, June 20, 2016.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

**End of Document**