Neutral
As of: March 14, 2018 6:34 PM Z

# [Freedman v. Fisher](#)

United States District Court for the Eastern District of Pennsylvania

September 30, 2014, Decided; October 1, 2014, Filed

CIVIL ACTION NO. 13-3145

**Reporter**
2014 U.S. Dist. LEXIS 139226 *

GARY FREEDMAN, et al., Plaintiffs v. STEVEN FISHER, M.D., et al., Defendants

**Prior History:** [Freedman v. Fisher, 2014 U.S. Dist. LEXIS 79911 (E.D. Pa., June 11, 2014)](#)

## Core Terms

emotional distress, negligent infliction of emotional distress, summary judgment motion, defendants', emotional, patient

**Counsel:** [*1] For GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER, DECEASED, BRACHA STRIMBER, Plaintiffs: JAMES EDWARD HOCKENBERRY, LEAD ATTORNEY, Law Office of Leon Aussprung, M.D., Philadelphia, PA; H. LEON AUSSPRUNG, III, LAW OFFICE OF LEON AUSSPRUNG MD, LLC, PHILADELPHIA, PA.

For STEVEN FISHER, M.D., ABINGTON EMERGENCY PHYSICIAN ASSOCIATES, Defendants: DONALD N. CAMHI, POST & SCHELL, P.C., PHILADELPHIA, PA; JAMES EDWARD HOCKENBERRY, Law Office of Leon Aussprung, M.D., Philadelphia, PA.

For MARGO TURNER, M.D., ABINGTON MEMORIAL HOSPITAL, Defendants: JAMES A. YOUNG, LEAD ATTORNEY, HEATHER A. TERESHKO, CHRISTIE PABARUE AND YOUNG, PHILADELPHIA, PA; JAMES EDWARD HOCKENBERRY, Law Office of Leon Aussprung, M.D., Philadelphia, PA.

For MANOJ R. MUTTREJA, M.D., ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., doing business as ABINGTON MEDICAL SPECIALISTS doing business as AMS CARDIOLOGY, Defendant: JAMES EDWARD HOCKENBERRY, Law Office of Leon Aussprung, M.D., Philadelphia, PA; JOHN P. SHUSTED, GERMAN GALLAGHER & MURTAGH, PHILADELPHIA, PA.

For RITESH RAMPURE, M.D., Defendant: JAMES A. YOUNG, CHRISTIE PABARUE AND YOUNG, PHILADELPHIA, PA.

**Judges:** J. WILLIAM DITTER, JR., J.

**Opinion by:** J. WILLIAM DITTER, [*2] JR.

## Opinion

**MEMORANDUM**

Ditter, J.

Presently before me is a motion for summary judgment filed by defendants Manoj Muttreja, M.D., and Abington Medical Specialists Association, P.C., as to a wife's claim for the negligent infliction of emotional distress arising from the death of her husband. For the reasons that follow, I will grant the defendants' motion for summary judgment.[1]

This action involves the alleged failure of hospital doctors to properly diagnose and treat Abraham Strimber for a dissecting aorta[2] as a result of which he died.

Mr. Strimber presented to the emergency department at

---

[1] Defendants filed their motion on alternative grounds - as a motion to dismiss pursuant to [Federal Rules of Civil Procedure 12(b)(6)](#) and [12(c)](#) or as a motion for summary judgment pursuant to [Federal Rule of Civil Procedure 56](#). Because I find that Plaintiff's claim for negligent infliction of emotional distress states a claim under Pennsylvania law for which "relief can be granted," the motion to dismiss is summarily denied. See [Fed.R.Civ.P. 12(b)(6)](#), [(c)](#).

[2] It may have been a ruptured ascending aorta aneurysm. For the present purposes, at least, the difference is unimportant.

Abington Memorial Hospital with a series of chest and abdominal complaints at approximately 11:40 a.m. Within minutes Mr. Strimber was evaluated **[*3]** by an emergency department nurse and then assigned to a primary nurse. Both nurses documented his complaints, their examinations, and their observations of Mr. Strimber.

At 12:23 p.m., Mr. Strimber was examined by an emergency department physician, Steven Fisher, M.D., who made a differential diagnosis and ordered extensive laboratory tests. At 2:27 p.m., Dr. Fisher admitted Mr. Strimber to the hospital for further observation.

Margo Turner, M.D., who specializes in internal medicine, next observed, examined, and ordered further testing. She admitted Mr. Strimber to hospital care. Mr. Strimber was next seen by Dr. Muttreja, a cardiologist, at 6:30 p.m.

At 8:30 p.m., the floor nurse alerted Dr. Turner to a dangerous change in Mr. Strimber's cardiac condition. Shortly thereafter he was taken to the catheterization lab where testing revealed pericardial hemorrhage. Mr. Strimber rapidly deteriorated and despite a series of emergency measures, he died at 10:49 p.m.

In summary, despite extensive testing, observation by several nurses, and treatment by three physicians[3] over the course of approximately 11 hours, Mr. Strimber died.

In addition to suits on behalf of Mr. Strimber's estate and Mrs. Strimber's loss of consortium claim, Mrs. Strimber sues for the negligent infliction of emotional distress (NIED) as a consequence of observing her husband from the time he came to the hospital until he died.

I am granting a defense motion for summary judgment as to this last claim.

The consequential emotional distress law (NIED) of Pennsylvania has developed as follows over the last several years:
>    1) although the plaintiff may not have suffered a physical injury, recovery is allowed when he or she was in close proximity to a traumatic event, typically an accident;
>    2) recovery is allowed if the plaintiff witnessed an accident that caused serious injury to a close family member; and
>    3) most recently, and still evolving, where a defendant owes the plaintiff a duty that arises from a contractual or fiduciary obligation.

Mrs. Strimber's claim is based on this most recent category. She alleges that she was present during the entire time of her husband's hospital care and treatment; observed his pain, suffering, anguish, and fear; and as a result "suffered and experienced severe emotional distress and extreme **[*5]** mental pain and suffering." *See Am. Comp.*, at ¶ 73.

In *Toney v. Chester County Hospital, 36 A.3d 83 (Pa. 2011)*, an evenly divided Supreme Court of Pennsylvania affirmed a Superior Court's finding that plaintiff's allegations of resulting emotional distress withstood a motion to dismiss. In *Toney*, it was undisputed that defendants performed an ultrasound examination of the plaintiff and her unborn child. They interpreted and reported the results to the plaintiff as normal. However, when the plaintiff gave birth to a son several months later he had "profound physical abnormalities." *Id. at 85*. Plaintiff alleged that the defendants' misinterpretation of the ultrasound prevented her from preparing herself for the shock of witnessing her son's birth with such substantial physical deformities. *Id*. She did not allege that the misinterpretation of the ultrasound was in any way related to the child's deformities, nor did it alter or delay their treatment. *Id*.

Because the Supreme Court was evenly divided on the issue its decision has no precedential value. Nonetheless, the careful and detailed opinion of the justices who favored affirmance is persuasive authority.

The justices who favored affirmance concluded that a justification exists to extend NIED liability **[*6]** "to a subset of cases involving preexisting relationships . . . involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach." *Toney, 36 A.3d at 95*. The court further noted that "[t]he potential emotional harm must not be the type that a reasonable person is expected to bear. . . [rather the] [c]ompensable emotional harm has been described as 'likely to be experienced as a visceral and devastating assault on the self' such that it 'resemble[s] physical agony in its brutality.'" *Id*. (citations omitted).

*Toney*, of course, involved the adequacy of pleadings. Mrs. Strimber's claim involves the adequacy of the record.

---

[3] There was also a telephone consultation with another cardiologist, **[*4]** Ritesh Rampure, M.D.

For the reasons that follow, I conclude that Mrs. Strimber's evidence does not satisfy any of *Toney's* requirements.

There is no showing that Mrs. Strimber had any preexisting relationship with the hospital or any of the doctors, nor that any relationship developed during the 11 hours before Mr. Strimber died. With one minor exception, there is no record of any conversations — no questions, suggestions, or comments from or to the doctors on their part or on her part.

Mrs. Strimber's observations of Mr. Strimber's pain and fear are of a type that life's experiences often bring **[*7]** and are of a type that a reasonable person may be expected to bear. There is nothing in the record to suggest that her observations were "a devastating assault on her self" akin to "physical agony in its brutality." *Toney, 614 Pa. at 117.*

Moreover, there is nothing in the record to suggest that her presence when Mr. Strimber died had any extraordinary effect on Mrs. Strimber.

The only exception to what I have said about her being involved with any of the health care professionals is recorded in her deposition:

> **A**. . . . I vaguely remember something about blood test and that my husband was going to have a CAT scan, but I don't remember which physician said that.
> I do remember that later on in the evening she wanted to discharge him, we're going to discharge him now. And I said, you can't do that.
> I said, how do you know that he didn't have a heart attack because of all these symptoms? And she said, well, we could keep him overnight and could check his enzymes every eight hours and find out if he had a heart attack.
> And I said, well, what would that do if you find out he had a heart attack? Well, we'll have to wait and see.
>
> So she sent him upstairs to a different room outside of the ER. They were **[*8]** going to observe him.
> And when everything turned bad, when all of a sudden I saw my husband turn ashen and go unconscious, that's when I yelled for help.
> And people started sauntering in, joking, laughing out in the hallways, you know, the people that were coming into his room.
> And they pushed me out of his room. Then some young woman in a lab coat said, does anybody know how to code? I don't know how to code? Can somebody tell me how to code? I never coded before.
> And I started panicking out in the hallway. And then Dr. Turner came out, but I hadn't seen her go into the room. She had come out and put her hands on both of my shoulders.
> She said, look, we just found a blockage. It's not in the bad artery. It's in the good artery. And we're going to take him to the cath lab, and we're going to put in a stent and he'll be fine and probably go home tomorrow.
> That was the extent of my conversation with her. Then they took him away.
>
> **Q**. You mentioned that at some point he turned ashen and became unconscious.
>
> **A**. Yes.
>
> **Q**. Were you alone in the room with him when that happened?
>
> **A**. I believe so.
>
> **Q**. Are you able to tell me whether he was hooked up to various machines?
>
> **A**. He had all kinds of leads on him, but **[*9]** there was a young girl before who was trying to attach leads. And she said she didn't know how to do it and could someone show her how to do it.
> There were two in the room at that time. It was not the same time when I saw him go ashen. I don't know the time frame, but it was upstairs in that room and not in the ER.

*See* Dep. of Bracha Strimber, 2/17/14, at 60-62.

*Toney*, and the cases from other jurisdictions to which it refers, make clear that a doctor's duty is to the patient and not to the concerned or worried relative. *See Toney, 614 Pa. at 117-118* ("some relationships, including some doctor-patient relationships, will involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm"). There is no suggestion that a relative's claim should derive from the duty to the patient. There is a sound reason for confining a doctor's duty to the patient, especially in light of a possible life and death situation. Under such circumstances a doctor should be able to give all of his attention to the patient and not be worried about whether he has perceived and prevented any emotional distress, severe or otherwise,

Case 1:16-cv-01657-YK   Document 31-2   Filed 03/19/18   Page 4 of 4

2014 U.S. Dist. LEXIS 139226, *9

in one or **[*10]** more persons previously unknown to him, persons whom he may not have even met.[4]

Mrs. Strimber has failed to establish that Mr. Strimber's physicians owed her a duty of care. Moreover, she failed to establish that her contemporaneous observation of her husband's alleged pain and suffering rises to the level "a devastating assault" or "physical agony." Toney, 614 Pa. at 117. For these reasons, defendants' Manoj Muttreja, M.D., and Abington Medical Specialists Association, P.C., motion for summary judgment on Mrs. Strimber's claim for negligent infliction of emotional distress is granted.

An appropriate order follows.

**ORDER**

**AND NOW**, this 30th day **[*11]** of September, 2014, upon consideration of the Motion of Defendants, Manoj Muttreja, M.D., and Abington Medical Specialists, P.C., for Judgment on the Pleadings, or in the alternative, for Summary Judgment as to Count VIII of Plaintiffs' Amended Complaint alleging negligent infliction of emotional distress (Doc. No. 70), and the response (Doc. No. 71), **I HEREBY ORDER** that:

> 1. Defendants' Manoj Muttreja, M.D., and Abington Medical Specialists, P.C., Motion to Dismiss Count VIII of Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) is **DENIED**.
>
> 2. Defendants' Manoj Muttreja, M.D., and Abington Medical Specialists, P.C., Motion for Summary Judgment as to Count VIII of the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 56 is **GRANTED**.

/s/ J. William Ditter, Jr.

**J. WILLIAM DITTER, JR., J**.

---

[4] I reach this conclusion cognizant of the theory of bystander liability adopted by the Pennsylvania Supreme Court in Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (Pa. 1979) (adoption of the bystander liability theory of NIED allowed recovery for emotional distress for plaintiffs who witnessed an accident causing serious injury to a close family member). I do not apply the bystander rule in this case because I conclude that application of any rule that would require a physician to be concerned about the emotional well-being of unknown persons would divert his attention from the duty to care for the patient.

End of Document

Janene Druck