Positive
As of: March 14, 2018 6:37 PM Z

# Kroposky v. Luis De La Fuente, M.D.

Common Pleas Court of Lackawanna County, Pennsylvania

March 11, 2011, Decided

NO. 10 CV 703

**Reporter**
2011 Pa . Dist. & Cnty. Dec. LEXIS 598 *

SANDRA KROPOSKY, Individually and as Parent and Natural Guardian of EVANGELINA KROPOSKY, a Minor, Plaintiff vs. LUIS DE LA FUENTE, M.D., JOHN P. GRANDY, M.D., ELIZABETH N. ESCALANTE, M.D., EUL K. KIM, M.D., CYNTHIA E. STRAND-SMART, M.D., DAVID M. CONNUCK, M.D., DEBRA SCOPELLITI GEORGETTI, M.D., MOSES TAYLOR HOSPITAL, AMY BETZ, M.D., and PEDIATRIC PRACTICES OF NEPA, LLP, Defendants

## Core Terms

allegations, preliminary objection, daughter, amended complaint, infliction, omission, diagnose, employees, traumatic, witnessed, negligent infliction of emotional distress, traumatic event, observance, set forth, averred, cause of action, asserting, demurrer, amend, negligent act, circumstances, malpractice, fraternity, bystander, discovery, emotional, tortious, pleaded, days, agency relationship

## Case Summary

### Overview
Two doctors' demurrer to a mother's negligent infliction of emotional distress claim was overruled. The mother was not foreclosed from pursuing her claim because the negligence involved acts of omission. The mother observed her daughter's respiratory distress during her hospital stay and complained to the doctors, but they failed to do anything to improve her daughter's condition. She witnessed her daughter's convulsion-like episodes and failure to wake up from anesthesia at an eye hospital that led to her daughter being rushed to a university hospital for emergency cardiac care.

### Outcome
Doctors' preliminary objections overruled, in part, and sustained, in part. Preliminary objections in nature of demurrer overruled. Plaintiff afforded limited discovery on agency issue in response to preliminary objection in nature of motion to strike.

## LexisNexis® Headnotes

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Demurrers

### *HN1*[ ] Defenses, Demurrers & Objections, Demurrers

Preliminary objections in the nature of a demurrer test the legal sufficiency of the challenged pleading. When considering preliminary objections, all material facts set forth in the contested pleading are accepted as true, as well as all inferences that may be reasonably deduced from those facts. Preliminary objections which result in the dismissal of an action may be sustained only if it appears with certainty that the law would not permit recovery by the plaintiff based upon the facts averred. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

### *HN2*[ ] Negligent Infliction of Emotional Distress, Elements

In *Pennsylvania*, a cause of action for negligent infliction of emotional distress is recognized only in four sets of circumstances: (1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty; (2) the plaintiff was subjected to a

physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

**HN3[ ]  Negligent Infliction of Emotional Distress, Elements**

The viability of an negligent infliction of emotional distress claim under the bystander rule is contingent upon whether: (a) the plaintiff was located near the scene of the trauma, as contrasted with one who was a distance away from it; (b) the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the trauma, rather than learning about it from others after its occurrence; and (c) the plaintiff and the victim were closely related, as opposed to the absence of a relationship or the presence of only a distant relationship.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

**HN4[ ]  Negligent Infliction of Emotional Distress, Elements**

In describing the second element of the bystander theory, the appellate court has stated that the basis of recovery for a claim of negligent infliction of emotional distress is the traumatic impact of viewing the negligent injury of a close relative. A person who does not experience a sensory and contemporaneous observance of the injury does not state a cause of action for negligent infliction of emotional distress. In formulating the rule, the state's highest court has contemplated a discrete and identifiable traumatic event to trigger recovery. In the absence of such an event, no recovery is permitted.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

**HN5[ ]  Negligent Infliction of Emotional Distress, Elements**

Panels of the appellate court have variously phrased the observance requirement for negligent infliction of emotional distress as requiring that the plaintiff has observed the accident, the negligent act, the infliction of the negligent harm, the negligent event, and the traumatic event.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

**HN6[ ]  Negligent Infliction of Emotional Distress, Elements**

In order to recover for negligent infliction of emotional distress, the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiffs relative, with no buffer of time or space to soften the blow.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

**HN7[ ]  Negligent Infliction of Emotional Distress, Elements**

The appellate court does not intend to fashion a rule for

negligent infliction of emotional distress that excludes recovery to all plaintiffs who allege negligent infliction based on their observance of a negligent omission by defendants. There are certainly circumstances where an omission might be construed as a traumatic infliction of injury on the plaintiff's relative and, if the plaintiff observed that occurrence, recovery could be had. Take, for example, the situation where a husband plaintiff seeks to admit his wife to an emergency room for medical care. Because of inaction by the emergency room personnel, the wife is left to languish in the outer office and expires there. Husband has viewed the entire event. The omission by the emergency room personnel in this scenario might create a sufficiently traumatic situation to be the basis for recovery for negligent infliction.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

*HN8*[ ] **Negligent Infliction of Emotional Distress, Elements**

Healthcare providers may be liable for negligently inflicted emotional distress resulting from their acts of omission in failing to timely diagnose or treat a patient, provided that the patient's relative seeking to recover for negligent infliction of emotional distress witnessed the lack of proper care and the resulting harm.

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Elements

Torts > ... > Types of Negligence Actions > Negligent Infliction of Emotional Distress > Potential Plaintiffs

*HN9*[ ] **Negligent Infliction of Emotional Distress, Elements**

Federal and state trial courts have cited Love with approval in similarly concluding that physicians and healthcare providers may be liable for negligent infliction of emotional distress (NIED) under the bystander rule in cases where their treatment involved negligent omissions. However, the party advancing the claim for NIED must have observed the medical treatment at issue.

Civil Procedure > ... > Pleadings > Complaints > General Overview

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation

*HN10*[ ] **Pleadings, Complaints**

The purpose of a complaint is to place the defendant on notice of the claims against which she will have to defend. Under *Pennsylvania*'s fact pleading system, the complainant need only state the material facts upon which a cause of action is based. Furthermore, the complaint need not cite evidence but only those facts necessary for the defendant to prepare a defense. When considering whether the allegations of the complaint have been stated with adequate specificity, one portion of the complaint should not be examined in isolation and should instead be read in context with all other allegations in that complaint. Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which she must defend.

Business & Corporate Law > Agency Relationships > Authority to Act > General Overview

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Business & Corporate Law > Agency Relationships > Ratification > General Overview

*HN11*[ ] **Agency Relationships, Authority to Act**

While it is unnecessary to plead all the various details of an alleged agency relationship, a complainant must allege, as a minimum, facts which: (1) identify the agent

Case 1:16-cv-01657-YK   Document 31-3   Filed 03/19/18   Page 4 of 11 Page 4 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *598

by name or appropriate description; and (2) set forth the agent's authority, and how the tortious acts of the agent either fall within the scope of that authority, or, if unauthorized, were ratified by the principal.

> Business & Corporate Law > ... > Duties & Liabilities > Causes of Action & Remedies > General Overview
>
> Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview
>
> Torts > Malpractice & Professional Liability > Healthcare Providers
>
> Civil Procedure > Discovery & Disclosure > General Overview

*HN12*[ ] **Duties & Liabilities, Causes of Action & Remedies**

A more practical and efficient solution to the problem of identifying a defendant's employees for agency purposes is to afford the plaintiff a finite period of time to conduct discovery on the agency issue and to either: (a) promptly amend the complaint thereafter to identify the agents involved or (b) have the agency allegations stricken for failure to do so. Such an approach is particularly warranted in medical malpractice litigation where healthcare providers' handwritten notations, orders or entries are often indecipherable and must be interpreted by their authors before a plaintiff can fully ascertain" the requested information.

**Judges:** [*1] Terrence R. Nealon, J.

**Opinion by:** Terrence R. Nealon

## Opinion

CIVIL ACTION - LAW

**MEMORANDUM AND ORDER**

NEALON. J.

Two physicians in this malpractice action have demurred to plaintiff mother's claim for negligently inflicted emotional distress and assert that she cannot state a viable claim under the "bystander rule" since their alleged failure to diagnose and treat the minor daughter's heart condition constitutes inaction which cannot be deemed a "discrete and identifiable traumatic event" that was observed by the mother. One physician also seeks to strike the plaintiff's agency allegations on the grounds that the plaintiff has not identified the physician's alleged employees or agents, their authority, and whether their tortious conduct was either within the scope of their authority or ratified by the physician.

Since the mother has alleged that she witnessed the defendants' negligent treatment of her daughter and the respiratory distress, seizure and cardiac complications that she suffered from that malpractice, she has averred a claim for negligent infliction of emotional distress even though the negligence involved acts of omission. Furthermore, since the identities of the physician's employees are either [*2] known to that physician or contained in the medical records which must first be interpreted by their author(s), the plaintiff will be granted a limited period of time to conduct discovery on that agency issue and to thereafter amend her pleading to specifically aver the agency information sought. If she fails to do so within the prescribed time, her agency allegations with respect to that physician will be stricken.

## I. FACTUAL BACKGROUND

Plaintiff Sandra Kroposky ("Kroposky") has instituted this malpractice action against various physicians who treated her infant child, Evangelina Kroposky ("Evangelina"), at Moses Taylor Hospital in early 2008 and during Evangelina's post-hospitalization period throughout the remainder of 2008. Kroposky contends that Evangelina was born at Moses Taylor Hospital on January 28, 2008, and was immediately transferred to the neonatal intensive care unit due to respiratory distress, tachycardia and apparent congenital heart problems. Between January 28, 2008 and February 6, 2008, Evangelina allegedly received substandard medical care from defendants Luis De La Fuente, M.D., John P. Grandy, M.D., Elizabeth N. Escalante, M.D., Eul K. Kim, M.D., Cynthia E. Strand-Smart, [*3] M.D., David M. Connuck, M.D. and Debra Scopellitti Georgetti, M.D. and was discharged without any recommendation for follow-up care with a cardiologist or pulmonologist. (Plaintiff's Amended Complaint, ¶¶29-45).

Following her discharge, Evangelina received pediatric care from defendant Amy Betz, M.D. ("Betz") of defendant Pediatric Practices of NEPA, LLP. Kroposky allegedly advised Dr. Betz that Evangelina "had

Case 1:16-cv-01657-YK   Document 31-3   Filed 03/19/18   Page 5 of 11 Page 5 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *3

experienced a seizure or a convulsion" on July 21, 2008, had episodes of "twitching and/or trembling" on July 24, 2008, and was "panting a lot" on November 21, 2008. (Id., ¶¶46-51). Dr. Betz did not recommend a cardiac or pulmonary consultation during those contacts or visits, and to the contrary, provided Evangelina "medical clearance for a glaucoma test under general anesthesia" at Wills Eye Hospital on November 25, 2008. (Id., ¶¶52-53). Kroposky maintains that the physicians at Moses Taylor Hospital and Dr. Betz failed to properly diagnose Evangelina "as having a huge PDA, coarctation of the aorta, and pulmonary hypertension" and to provide the "continuing treatment, oxygen therapy, and special attention" warranted under the circumstances. (Id., ¶53).

Kroposky "was present [*4] and accompanied" Evangelina to Wills Eye Hospital for her glaucoma test which was conducted "under anesthesia." (Id., ¶88). Kroposky asserts that Evangelina "had such a dramatic drop in oxygen saturation and she was not waking up from the anesthesia, which alarmed the anesthesiologist, Dr. Goldberg, who called and requested an emergency consult with Dr. Bradley Robinson, Chief Pediatric Cardiologist at Thomas Jefferson University Hospital, and Dr. Goldberg then took off his scrubs and immediately picked up and physically took [Evangelina] and [Kroposky] from Wills Eye Hospital to Dr. Bradley's office at Thomas Jefferson University Hospital, and Dr. Goldberg continuously checked the condition of [Evangelina] during transit, causing [Kroposky] great shock, panic, and fear for her daughter's life and immediate survival." (Id., ¶89). According to Kroposky, Dr. Robinson informed her that Evangelina "needed emergency open-heart surgery," but that due to the earlier delay in correctly diagnosing her cardiac condition, Evangelina "may die." (Id., ¶90). Kroposky maintains that "[a]s a result of [Kroposky] witnessing, awareness and observation of the foregoing shocking and traumatic condition [*5] of her daughter, [Kroposky] was caused to suffer significant physical and emotional injuries manifested by unremitting and continuous nervousness, anxiety, nausea, dizziness, nightmares, depression, distress and other physical and emotional symptoms and conditions." (Id., ¶94).

Several defendants filed preliminary objections to Kroposky's original complaint and sought to dismiss her claim for negligent infliction of emotion distress ("NIED") and to strike her allegations of negligence on the basis of insufficient specificity. In his Order of July 13, 2010, Senior Judge Harold Thomson observed that the defendants requested dismissal of the NIED claim on the ground "that there was no one discernible negligent act or injury witnessed by [Kroposky] as it was being inflicted upon [Evangelina]." (Trial Court Order dated 7/13/10, p. 2). In directing Kroposky to file an amended complaint, Senior Judge Thomson reasoned:

> Here, plaintiff's counsel at oral argument described in vivid detail the circumstances surrounding [Evangelina's] drop in oxygen saturation subsequent to her eye exam, and the life-saving procedures employed upon her in [Kroposky's] presence. It is the opinion of this court that...it [*6] is improper to entirely dismiss these claims at the preliminary objection stage, even though they are not explicitly spelled out in the pleadings currently.
> As such, defendants' preliminary objections as to the negligent infliction of emotional distress are SUSTAINED. [Kroposky] is instructed to file a new pleading describing the events giving rise to her negligent infliction of emotional distress claim with greater specificity and particularity so as to apprise [defendants] of the circumstances of the alleged injury within thirty days.

(Id., at pp. 2-3)

Kroposky filed an amended complaint, in response to which two defendants, Dr. David M. Connuck and Dr. Cynthia E. Strand-Smart, have submitted another set of preliminary objections. Only two of those objections warrant consideration inasmuch as the other objections merely reassert earlier arguments that have already been rejected by Senior Judge Thomson. In their joint demurrer, Dr. Connuck and Dr. Strand-Smart seek to dismiss Kroposky's NIED claim and allege that the supplemental allegations contained in the amended complaint do not state a cognizable cause of action for NIED. Additionally, Dr. Connuck objects to Kroposky's agency allegations [*7] and asserts that they lack sufficient specificity. Following the completion of oral argument on February 22, *2011*, the preliminary objections became ripe for resolution.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

*HN1*[↑] Preliminary objections in the nature of a demurrer test the legal sufficiency of the challenged pleading. Feingold v. Hendrzak, *2011 PA Super 34, 15*

Case 1:16-cv-01657-YK   Document 31-3   Filed 03/19/18   Page 6 of 11

Page 6 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *7

*A.3d 937*, **2011** *WL 590294 at * 2 (**Pa.** **Super.** **2011**)*. When considering preliminary objections, all material facts set forth in the contested pleading are accepted as true, as well as all inferences that may be reasonably deduced from those facts. *Haun v. Community Health Systems. Inc.,* **2011** *PA Super 15, 14 A.3d 120,* **2011** *WL 166324 at * 3 (**Pa.** **Super.** **2011**)*; *Pratter v. Penn Treaty American Corp., 11 A.3d 550, 560 (**Pa.** Cmwlth. 2010)*. Preliminary objections which result in the dismissal of an action may be sustained only if it appears with certainty that the law would not permit recovery by the plaintiff based upon the facts averred. *Ira G. Steffy & Son. Inc. v. Citizens Bank of Pennsylvania, 2010* **PA** *Super 175, 7 A.3d 278, 282-283 (**Pa.** **Super.** 2010)*. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Feingold, supra*; *Haun. supra.*

**(B) NEGLIGENT [*8] INFLICTION OF EMOTIONAL DISTRESS**

In Count IV of the amended complaint, Kroposky has advanced a claim for NIED. *HN2*[↑] In **Pennsylvania**, a cause of action for NIED is recognized only in four sets of circumstances: (1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. *Toney v. Chester County Hospital, 2008* **PA** *Super 268, 961 A.2d 192, 197-198 (**Pa.** **Super.** 2008)*; *Brown v. Philadelphia College of Osteopathic Medicine, 449* **Pa.** *Super. 667, 678-679, 674 A.2d 1130, 1135 (1996)*. In the case at hand, Kroposky is asserting a claim for NIED under the fourth category of potential recovery which is commonly referred to as the "bystander rule." (*See*, Plaintiff's Brief in Opposition, pp. 8-9).

*HN3*[↑] The viability of an NIED claim under the bystander rule is contingent upon whether: (a) the plaintiff was located near the scene of the trauma, as contrasted with one who was a distance away from it; (b) the shock resulted from a direct emotional impact upon the **[*9]** plaintiff from the sensory and contemporaneous observance of the trauma, rather than learning about it from others after its occurrence; and (c) the plaintiff and the victim were closely related, as opposed to the absence of a relationship or the presence of only a distant relationship. *Sinn v. Burd, 486* **Pa.** *146, 170-171, 404 A.2d 672, 685 (1979)*; *Long v. Yingling, 700 A.2d 508, 516 (**Pa.** **Super.** 1997)*, app. denied, 555 **Pa.** 731, 725 A.2d 182 (1998). *HN4*[↑] In describing the second element of the bystander theory, the Superior Court has stated:

> The basis of recovery for a claim of negligent infliction of emotional distress is the traumatic impact of viewing the negligent injury of a close relative. A person who does not experience a sensory and contemporaneous observance of the injury does not state a cause of action for negligent infliction of emotional distress. In formulating the rule, the Supreme Court "contemplated a discrete and identifiable traumatic event to trigger recovery." In the absence of such an event, no recovery is permitted.

*Huddleston v. Infertility Center of America, 700 A.2d 453, 462 (**Pa.** **Super.** 1997)*; *Turner v. Medical Center, Beaver, **PA**, Inc., 454* **Pa.** *Super. 645, 651, 686 A.2d 830, 832 (1996)*, **[*10]** app. denied, 548 **Pa.** 673, 698 A.2d 596 (1997).

The demurrer presented by Dr. Connuck and Dr. Strand-Smart asserts that Kroposky is unable to identify "a discrete and identifiable traumatic event" to support her claim for NIED. Dr. Strand-Smart notes that Kroposky's "allegations involve an alleged omission by the defendants" since her "central theory is that defendants failed to diagnose and treat a congenital heart disorder." (Dr. Strand-Smart's Brief in Support, p. 7). Dr. Connuck posits that "[i]t cannot be credibly argued that 'witnessing' someone not diagnose a congenital heart disorder is a discrete and traumatic event." (Dr. Connuck's. Brief in Support, p. 7). Both objectors premise their demurrer upon *Bloom v. Dubois Regional Medical Center, 409* **Pa.** *Super. 83, 597 A.2d 671 (1991)*. (Dr. Strand-Smart's Brief in Support, pp. 6-7; Dr. Connuck's Brief in Support, pp. 6-8).

In Bloom, a husband and wife sued a psychiatrist and hospital for injuries sustained after the husband found his wife in her hospital room hanging by the neck from shoestrings in a failed suicide attempt. The husband alleged "that Mrs. Bloom had informed defendants of her mental disorder upon her admission and requested **[*11]** treatment," but the defendants failed to "adequately test, diagnose and supervise her" and to "properly train and supervise its staff." *Bloom, 409* **Pa.** *Super, at 87-88, 597 A.2d at 673-674*. Although Mr. Bloom asserted a cause of action for NIED, the trial court dismissed that claim on the basis that he had not "witnessed the tortious act itself." *Id., at 91, 597 A.2d at*

Case 1:16-cv-01657-YK   Document 31-3   Filed 03/19/18   Page 7 of 11

Page 7 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *11

*675*.

On appeal, the Superior Court noted that *HN5*[↑] "[p]anels of this court have variously phrased the observance requirement as requiring that the plaintiff have observed 'the accident,' 'the negligent act,' 'the infliction of the negligent harm,' 'the negligent event,' and the 'traumatic event.'" *Id., at 103, 597 A.2d at 682*. In framing the issue before it, the Bloom court stated that "unlike the prior cases which dealt with an affirmative and traumatic negligent act by the defendant and simultaneous injury, the instant case involves a failure to act on the part of the defendants and the injury occurred sometime after the negligent act and as a direct result of Mrs. Bloom's own intervening suicide attempt." *Id., at 104, 597 A.2d at 682*. The Superior Court affirmed the dismissal of the husband's NIED claim, finding that *HN6*[↑] in **[*12]** order "[t]o recover the plaintiff must have observed the defendant traumatically inflicting the harm on the plaintiffs relative, with no buffer of time or space to soften the blow." *Id., at 105, 597 A.2d at 682*. In so holding, the Majority in Bloom reasoned:

> Mr. Bloom observed his wife in the aftermath of her own suicide attempt. He did not, however, observe any traumatic infliction of injury on his wife at the hands of the defendants because none occurred. The alleged negligence of defendants here is an omission and involved no direct and traumatic infliction of injury on Mrs. Bloom by defendants. Under the circumstances, we find that Mr. Bloom has not sufficiently pleaded a cause of action for negligent infliction of emotional distress since he has not pleaded the element of contemporaneous observance of traumatic infliction of injury by defendants.

*Id., at 105, 597 A.2d at 683*.[1]

Relying upon the above-quoted language from Bloom, Dr. Strand-Smart and Dr. Connuck contend that Kroposky's NIED claim is insufficient as a matter of law since their alleged negligence involves mere omissions in failing to properly diagnose and treat Evangelina's heart condition. However, their argument in that regard overlooks the very next paragraph of the Majority holding which reads:

> We hasten to add, however, that *HN7*[↑] we do not intend to fashion a rule that excludes recovery to all plaintiffs who allege negligent infliction based on their observance of a negligent *omission* by defendants. There are certainly circumstances where an omission might be construed as a traumatic infliction of injury on the plaintiff's relative and, if the plaintiff observed that occurrence, recovery could be had. Take, for example, the situation where a husband plaintiff seeks to admit his wife to an emergency room for **[*14]** medical care. Because of inaction by the emergency room personnel, the wife is left to languish in the outer office and expires there. Husband has viewed the entire event. The omission by the emergency room personnel in this scenario might create a sufficiently traumatic situation to be the basis for recovery for negligent infliction.

*Id., at 106, 597 A.2d at 683* (emphasis in original).

Subsequent decisional precedent confirms that *HN8*[↑] healthcare providers may be liable for negligently inflicted emotional distress resulting from their acts of omission in failing to timely diagnose or treat a patient, provided that the patient's relative seeking to recover for NIED witnessed the lack of proper care and the resulting harm. In *Love v. Cramer, 414 Pa. Super. 231, 606 A.2d 1175 (1992)*, app. denied, 533 Pa. 634, 621 A.2d 580 (1992), a daughter accompanied her mother to medical appointments and expressed concern to the treating physician, Dr. Cramer, that her mother was experiencing heart problems. Dr. Cramer did not order any testing or hospitalization in an effort to diagnose the mother's condition. Several weeks later, the mother died of heart failure in her daughter's presence. *Id., at 232-233, 606 A.2d at 1176*. **[*15]** The trial court dismissed the daughter's claim for NIED, finding that she had not observed a discrete and identifiable traumatic event justifying recovery. In reversing the lower court, the Superior Court concluded that the daughter's "observance of the lack of medical care, along with her observance of her mother's heart attack is enough to sustain her claim for negligent infliction of emotional distress." *Id., at 237, 606 A.2d at 1178*. Following its discussion of Bloom and the defense's contention that a

---

[1] In his concurring and dissenting Opinion, Judge Del Sole disagreed with that portion of the Majority Opinion which dismissed the husband's NIED claim on the basis that he never observed the negligent acts of the defendants. Judge Del Sole stated that "[o]nly when Mr. Bloom encountered his wife's hanging body **[*13]** did he suffer the emotional distress for which he now seeks recovery and it is illogical to hold that observation of these negligent acts and omissions of defendants is the necessary element to a finding for Mr. Bloom." *Id., at 108, 597 A.2d at 684* (Del Sole, J., concurring and dissenting).

failure to diagnose or treat cannot support a claim for NIED, the Love court held:

> This is not the simple situation wherein the plaintiff did not observe the traumatic event, but nevertheless sought to recover for emotional distress. Rather, [daughter] witnessed the traumatic event and the earlier negligence of the doctor. Her recovery, if proven, would be based upon the fact that her emotional injury was due to her first hand observation of her mother's heart attack, an event caused by Dr. Cramer's negligence, which she had also witnessed.

Id.

HN9[↑] Federal and state trial courts have cited Love with approval in similarly concluding that physicians and healthcare providers may be liable [*16] for NIED under the bystander rule in cases where their treatment involved negligent omissions. See e. g., Leab v. Chambersburg Hospital, 2005 U.S. Dist. LEXIS 35697, 2006 WL 1428304 at * 3 (M.D. Pa. 2005) (refusing to dismiss mother's NIED claim against nurse who "failed to alert a physician when the baby began to suffer variable decelerations in heart rate" and the attending physician who was "negligent in failing to call Dr. O'Reilly in a timely manner."); Plaisted v. Geisinger Medical Center, 210 F.R.D. 536, 538-539 (M.D. Pa. 2002) (parents permitted to amend complaint to assert cause of action for NIED based upon allegations that defendants' failure "to monitor properly and correct [child's] serum sodium levels" allowed his brain to swell and caused child to die in parents' presence); Medina v. Hershey Medical Center, 4 Pa. D. & C. 5th 526 (Dauph. Co. 2008) (denying preliminary objections to wife's NIED claim asserting that defendants' failure to timely diagnose and treat husband's condition caused him to suffer seizures and multi-organ failure in her presence). In order to recover for NIED, the plaintiff need not realize that the medical care was negligent at the time that [s]he witnessed the treatment of the [*17] relative. See, Weaver v. University of Pittsburgh Medical Center, 2008 U.S. Dist. LEXIS 57988, 2008 WL 2942139 at * 12 (W.D. Pa. 2008) ("Defendant offers no support for its contention that in NIED cases involving negligent omissions, the plaintiff must allege contemporaneous understanding that the care provided was not up to professional standards or was otherwise negligent."). However, the party advancing the claim for NIED must have observed the medical treatment at issue. See, Halliday v. Beltz. 356 Pa. Super. 375, 378-379, 514 A.2d 906, 908 (1986) (affirming dismissal of husband's NIED claim since complaint failed to aver that he viewed the negligent treatment).

Accepting as true the allegations of Kroposky's amended complaint, as well as all inferences reasonably deducible therefrom, Kroposky has arguably stated a cause of action for NIED under the bystander rule. Kroposky contends that upon observing Evangelina's respiratory distress and physical difficulties during her Moses Taylor Hospital stay, she "complained to defendants, but defendants failed to do anything to improve the condition of her daughter, instead allowing her daughter's condition to worsen and progress." (Plaintiff's Amended Complaint, ¶85). [*18] Kroposky avers that she was present, "aware of and observed the negligent care and treatment by the defendants and the fact that defendants were not responding to the adverse condition of her daughter, causing her further shock, trauma and emotional anguish." (Id., ¶86). In addition to witnessing the "seizure or convulsion-like episodes of her daughter," Kroposky claims to have observed the traumatic events at Wills Eye Hospital when Evangelina "did not wake up from the anesthesia" and was rushed by the attending anesthesiologist to Thomas Jefferson University Hospital for emergency cardiac care. (Id., ¶¶87-90).

Thus, Kroposky has sufficiently alleged that she observed the negligent treatment of her daughter by Dr. Connuck and Dr. Strand-Smart and the traumatic harm that Evangelina suffered as a result of those defendants' inaction. Kroposky is not foreclosed from pursuing a claim for NIED simply because the negligence in question involved acts of omission. See, Love, supra; Weaver, supra. Accordingly, the demurrer to Count IV of the Amended Complaint will be overruled.

*(C) AGENCY ALLEGATIONS*

Dr. Connuck also seeks to strike Kroposky's "vague allegations of agency" set forth in paragraph [*19] 23 of the amended complaint. (Dr. Connuck's Preliminary Objections, ¶¶31-41). In paragraph 23, Kroposky has averred that "[a]t all times relevant, minor plaintiff, Evangelina Kroposky, was under the care of the defendant Moses [Taylor Hospital] and defendants Dr. De La Fuente, Dr. Grandy, Dr. Escalante, Dr. Kim, Dr. Strand-Smart, Dr. Connuck and Dr. Scopelliti Georgetti, acting individually as well as through their respective agents and/or servants and/or employees and/or ostensible agents, all acting within the scope and course of their respective employments." (Plaintiff's Amended Complaint, ¶23). Dr. Connuck contends that Kroposky's

Case 1:16-cv-01657-YK Document 31-3 Filed 03/19/18 Page 9 of 11 Page 9 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *19

allegations of agency should be stricken since Kroposky "does not identify the individuals alleged to be Dr. Connuck's agents, nor is the authority of these agents set forth, as required by law." (Dr. Connuck's Brief in Support, p. 14).

HN10[↑] The purpose of a complaint is to place the defendant on notice of the claims against which [s]he will have to defend. *Carlson v. Community Ambulance Services. Inc., 2003 PA Super 200, 824 A.2d 1228, 1232 (Pa. Super. 2003)*; *Lavelle Murray v. Haggerty. 2 D. & C. 5th 338, 346-347 (Lacka. Co. 2006)*; Mulderig v. Allstate Insurance Company, 105 Lacka. Jur. 1, 8 (2003). [*20] "Under Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based." *Grossman v. Barke, 2005 PA Super 45, 868 A.2d 561, 569 (Pa. Super. 2005)*, app. denied, 585 Pa. 697, 889 A.2d 89 (2005); *Lavelle Murray, 2 D. & C. 5th at 347*. Furthermore, "the complaint need not cite evidence but only those facts necessary for the defendant to prepare a defense." *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission, 950 A.2d 1120, 1134 (Pa. Cmwlth 2008)*. When considering whether the allegations of the complaint have been stated with adequate specificity, one portion of the complaint should not be examined in isolation and should instead "be read in context with all other allegations in that complaint." *Rachlin v. Edmison, 2002 PA Super 387, 813 A.2d 862, 870 (Pa. Super. 2002)*; Mulderig, supra. "Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which [s]he must defend." *Grossman, 868 A.2d at 569*; *Lavelle Murray, supra.*

Relying upon *Alumni Association, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan, 369 Pa. Super. 596, 535 A.2d 1095 (1987)* and *Ettinger v. Triangle-Pacific Corporation, 2002 PA Super 142, 799 A.2d 95 (Pa. Super. 2002)*, [*21] app. denied, 572 Pa. 742, 815 A.2d 1042 (2003), Dr. Connuck seeks to strike Kroposky's agency allegations since Kroposky does not identify the purported agents, their scope of authority, and how their negligent conduct was authorized or ratified by Dr. Connuck. (Dr. Connuck's Brief in Support, pp. 13-14). In Alumni Association, a fraternity which was destroyed by a fire set by an intoxicated minor brought an action against a national fraternity and its local fraternity chapter where the minor was served alcohol. Following the dismissal of the suit as to the national fraternity, the plaintiff argued on appeal that the national fraternity could be vicariously liable on the theory that the local chapter acted as its agent. In declining to address the merits of that agency argument, the Superior Court deemed "the factual allegations of the complaint insufficient as a matter of law to place the issue of agency before this Court..." *Alumni Association, 369 Pa. Super, at 605 n. 2, 535 A.2d at 1100 n. 2*. To that end, the Alumni Association court stated:

> HN11[↑] While it is unnecessary to plead all the various details of an alleged agency relationship, a complainant must allege, as a minimum, facts [*22] which: (1) identify the agent by name or appropriate description; and (2) set forth the agent's authority, and how the tortious acts of the agent either fall within the scope of that authority, or, if unauthorized, were ratified by the principal. *See*, P. L. E. Agency §174.

Id.[2]

Ettinger concerned a refusal to instruct the jury on agency based, in part, upon the inadequacy of the agency averments in the complaint. The plaintiff in Ettinger originally sued Ken Pinkerton and his employer, Joe Green Associates, but discontinued all claims against them shortly before trial. However, at trial, the plaintiff requested a jury instruction which "sought to impute any negligence of Ken Pinkerton, the employee of Joe Green Associates...to [another defendant] PSI." *Ettinger, 799 A.2d at 108*. Affirming the trial court's refusal to provide the requested instruction, the Superior Court cited Alumni Association and concluded that an agency charge was unwarranted since the complaint had [*23] not averred any agency relationship between Pinkerton and PSI. *Id., at 110*. The Ettinger court distinctly noted that PSI was unprepared to rebut that agency theory because the plaintiffs "did not seek to amend their complaint to include the requisite specific allegations regarding the alleged agency relationship, nor did they include such averments in their pre-trial statement." *Id., at 109*.

Subsequent appellate decisions have not applied the Alumni Association/Ettinger analysis as rigidly as Dr. Connuck advocates and have instead focused upon whether the defendant has received adequate notice of the agency claim against which [s]he must defend. In *Yacoub v. Lehigh Valley Medical Associates, 2002 PA Super 251, 805 A.2d 579 (Pa. Super. 2002)*, app.

---

[2] *But see*, *Mazzarino v. Kushner, 36 D. & C. 4th 517, 535 (York Co. 1996)* ("...a closer look at Alumni Association reveals that the court must have been citing to *P. L. E. Agency § 122* because Section 174 does not exist.").

Case 1:16-cv-01657-YK   Document 31-3   Filed 03/19/18   Page 10 of 11   Page 10 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *23

denied, 573 Pa. 692, 825 A.2d 639 (2003), the plaintiff sought to introduce evidence establishing that certain radiologists were ostensible agents of Lehigh Valley Hospital. Plaintiff had alleged that the hospital was negligent for, inter alia, failing to properly interpret MRI films and to report accurate results of those scans to the treating physicians. Plaintiff also generally averred that "[a]ll of the acts alleged to have been done or not to have been done [*24] by defendant, Lehigh Valley Hospital, Inc., were done or not done by said defendant, its agents, ostensible agents, servants, workmen and/or employees, acting in the course and scope of their employment with and on behalf of said defendant." Id., at 588.

The trial court barred the plaintiff from asserting an ostensible agency theory and reasoned that the above-quoted "language was not sufficiently specific because plaintiff failed to name the alleged ostensible agents" as she had in other paragraphs addressing separate defendants. Id., at 588-589. In finding that the lower court had erred, the Superior Court concluded that since the plaintiff's negligence allegations had "call[ed] into question the hospital's conduct through its radiology department," the above-quoted agency allegation "sufficiently put [Lehigh Valley Hospital] upon adequate notice of the claim against which it must defend." Id., at 589.

More recently, in Loyle v. Hertz Corporation, 2007 PA Super 399, 940 A.2d 401 (Pa. Super. 2007), app. denied, 598 Pa. 775, 958 A.2d 1048 (2008), the Superior Court likewise relaxed the Alumni Association/Ettinger standard in reversing the trial court's entry of summary judgment based upon the lower court's [*25] determination that plaintiff had failed to sufficiently allege an agency relationship between the defendant corporation and a Canadian corporation. In Loyle, the **Pennsylvania** plaintiff reserved a rental car by telephone through the Hertz Corporation and later traveled to Canada where he picked up the rental car at the Toronto airport. Upon completing his business trip in Canada, he returned the rental car to the same airport location and proceeded to the airport terminal to await the boarding of his return flight to **Pennsylvania**. While awaiting the flight's departure, he was taken into custody by armed police officers and questioned for four hours after Hertz's cleaning personnel had discovered a loaded handgun in the leased car. Plaintiff later filed suit against the Hertz Corporation and alleged that it was negligent for failing to properly inspect the vehicle and discover the weapon after the previous renter had returned it and before it was rented by the plaintiff. Id., at 402-403.

Hertz Corporation filed a motion for summary judgment and argued that "the proper defendant should have been Hertz Canada, Ltd., which entity...was a separate and distinct corporation entity from itself." [*26] Id., at 403. The trial court granted summary judgment on the ground that the plaintiff had not pleaded an agency relationship between Hertz Corporation and Hertz Canada. Id. On appeal, the Loyle court noted that the plaintiff had averred that Hertz Corp. was headquartered in New Jersey, but also did business in Canada. Additionally, the plaintiff had alleged in the complaint that "Defendant Hertz, through its employees, servants and agents was negligent, careless and/or reckless." Id., at 405. In reversing the entry of summary judgment, the Superior Court stated:

> We have reviewed [plaintiff's] Complaint and conclude that it alleges sufficient facts and information to form the basis for a claim of ostensible or apparent agency of Hertz. Although the Complaint does not name Hertz Canada specifically, the paragraphs quoted above, in which [plaintiff] alleges that Hertz "does business in Canada as the Hertz Corp.", and also that Hertz's "employees, servants and agents" were the personnel directly responsible for the alleged tortious conduct, combined to satisfy both requirements of the test set forth in Ettinger, as referenced above."

Id. Hence, Loyle and Yacoub espouse a less stringent [*27] application of the Alumni Association/Ettinger test for judicial review of agency allegations in pleadings.

Dr. Connuck's contention that he "is severely prejudiced by these vague allegations of agency in that it is impossible to prepare a proper defense," (see, Dr. Connuck's Brief in Support, p. 15), presents a somewhat paradoxical argument. No party is in a better position than Dr. Connuck himself to know the identities of Dr. Connuck's employees and their involvement, or lack thereof, with Evangelina's care. As Judge S. John Cottone aptly observed almost twenty years ago, "[a]t the time the suit is filed, the defendants are in far more control of the information than the plaintiff...and the physicians and hospital staff are far less likely to volunteer information to the plaintiff absent formal depositions." Johnson v. Patel, 19 D. & C. 4th 305, 308 (Lacka. Co. 1993). Moreover, "[t]he exact facts pertaining to the propriety of care of the plaintiff are within the physicians' records or recall" and "the

Case 1:16-cv-01657-YK   Document 31-3   Filed 03/19/18   Page 11 of 11   Page 11 of 11

2011 Pa . Dist. & Cnty. Dec. LEXIS 598, *27

defendants certainly must be aware of which of their 'agents, servants or employees,' if any, assisted in the treatment of the plaintiff." *Id., at 308-309*. Since Kroposky has averred **[*28]** that Dr. Connuck provided care to Evangelina on a single day, i.e., January 29, 2008, (*see*, Plaintiff's Amended Complaint, ¶¶33-34), his records should reflect the identity of those individuals who acted as his employees or assisted with his care on that date. *See*, *Spagnola v. Mehta, 2009 Pa. Dist. & Cnty. Dec. LEXIS 442, 2009 WL 6997068 at * 3 (Northampton Co. 2009)* (declining to strike general allegations of agency in malpractice case since "Dr. Mehta has the information available to him as to the duties and responsibilities of his employees with regard to the plaintiff.").

If plaintiffs in malpractice actions were required to identify in their pleadings each defendant's employee, the employee's authority and whether the employee's negligent conduct was either authorized or ratified by that defendant, it would undoubtedly result in serial requests for pre-complaint discovery under *Pa. R.C.P. 4003.8* in virtually every case in order to preempt the filing of preliminary objections by the defense. In fact, one trial court sustained preliminary objections based upon Alumni Association since the plaintiffs had not availed themselves of pre-complaint discovery to determine the names of the alleged agents who provided negligent **[*29]** care. *See*, *Davitt v. Easton Warren Urology, 2009 Pa. Dist. & Cnty. Dec. LEXIS 443, 2009 WL 6969705 at * 2 (Northampton Co. 2009)*. **HN12**[↑] A more practical and efficient solution is to afford the plaintiff a finite period of time to conduct discovery on the agency issue and to either (a) promptly amend the complaint thereafter to identify the agents involved or (b) have the agency allegations stricken for failure to do so. *See*, *Fasula v. Hijazi, 44 D. & C. 4th 553, 563-566 (Lacka. Co. 1999)*; *Johnson, 19 D. & C. 4th at 309*. "Such an approach is particularly warranted in medical malpractice litigation where healthcare providers' handwritten notations, orders or entries are often indecipherable and must be interpreted by their authors before a plaintiff can fully ascertain" the requested information. Yanchick v. Tyler Memorial Hospital, 101 Lacka. Jur. 331, 335 (2000).

Therefore, Kroposky will be granted one hundred twenty (120) days within which to complete her agency discovery and to properly amend paragraph 23 of her pleading within thirty (30) days thereafter. If she fails to do so, her agency allegations as to Dr. Connuck will be stricken. This procedure will protect Dr. Connuck from eleventh hour assertions of agency without resorting **[*30]** to the drastic measure of prematurely striking agency allegations at the outset of the proceedings. An appropriate Order follows.

**ORDER**

AND NOW, this 11th day of March, **2011**, upon consideration of the preliminary objections of Defendant Cynthia E. Strand-Smart, M.D. and Defendant David M. Connuck, M.D., the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing Memorandum, it is hereby ORDERED and DECREED that:

1. The preliminary objections of Defendant Cynthia E. Strand-Smart, M.D., and Defendant David M. Connuck, M.D. are OVERRULED in part and SUSTAINED in part;

2. The preliminary objections in the nature of a demurrer to the plaintiff's claim for negligent infliction of emotional distress are OVERRULED;

3. With regard to the preliminary objections of Defendant David M. Connuck, M.D., in the nature of a motion to strike the agency allegations set forth in paragraph 23 of the amended complaint, the plaintiff shall be afforded one hundred twenty (120) days from the date of this Order within which to conduct discovery on the issue of agency so as to enable the plaintiff to amend paragraph 23 within thirty (30) days **[*31]** thereafter in order to identify the actual or ostensible agents of Dr. Connuck by name or appropriate description, to set forth the agent's authority, and to state whether the tortious acts of the agent either fell within the scope of that authority or were ratified by Dr. Connuck; and

4. If the plaintiff fails to so amend paragraph 23 of the amended complaint within one hundred fifty (150) days of the date of this Order, Dr. Connuck's motion to strike will be SUSTAINED and the plaintiffs allegations of agency with respect to Dr. Connuck will be deemed STRICKEN.

BY THE COURT:

/s/ Terrence R. Nealon

Terrence R. Nealon

**End of Document**