## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOANNA VARGAS, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | Docket No.  1:16:CV-01657-YK |
| | : | (Judge Kane) |
| PENN STATE HERSHEY | : | (Electronically Filed) |
| MILTON S. HERSHEY | : | |
| MEDICAL CENTER, | : | |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

## DEFENDANT'S PRETRIAL MEMORANDUM

Date conference was held by counsel: May 24, 2018

### A.   Statement as to Federal Court Jurisdiction

Jurisdiction is based on diversity of citizenship under 28 U.S.C. §
1332.  The Plaintiff is a citizen of Florida, whereas the Defendant is a
Pennsylvania corporation.  The amount in controversy exceeds the sum
of $75,000.

### B.   Summary of Facts and Contentions as to Liability

Plaintiff Joanna Vargas is Justino Vargas's widow and Executor
of Mr. Vargas's Estate.  At the time of the medical treatment at issue in

this medical professional liability action, Mr. and Mrs. Vargas lived in Florida but were visiting family in the Hershey, Pennsylvania area.

In the early morning hours of December 2, 2014, Mr. Vargas began to develop bright red, moderate rectal bleeding and almost passed out on the toilet.  He went to the bathroom and had a large bowel movement consisting of bright red blood.  At 3:00am, he had a second large bright red bowel movement.

Two hours after his rectal bleeding started, Mr. Vargas's family summoned an ambulance, which transported him to the Medical Center's Emergency Department (ED).  While in the ED, Mr. Vargas was determined to have acute blood loss anemia and hospital staff inserted two large bore IVs to begin fluid resuscitation, obtained bloodwork, and ordered a CT of his abdomen.

Mr. Vargas was admitted to the Medical Center's internal medicine service and was taken to the Medical Center's Intermediate Care Unit (IMC) for close observation.  He was aggressively resuscitated with IV fluids (IVF) and his vital signs normalized.

On consultation, the Medical Center's gastroenterology (GI) service planned for performance of an endoscopy (EGD) and

colonoscopy.  The GI service's assessment was that Mr. Vargas had an acute GI bleed, possibly due to a bleeding diverticula[1] in view of his known history of diverticular disease; alternatively, it was believed that the bleeding may be due to peptic ulcer disease (PUD) associated with Mr. Vargas recently beginning a course of nonsteroidal anti-inflammatory drugs (NSAIDs).

In the late afternoon on December 2, 2014 – the same day that Mr. Vargas initially presented to the Medical Center – he underwent an EGD and colonoscopy to evaluate the cause of his rectal bleeding. The EGD demonstrated the presence of clean-based stomach ulcers. His colonoscopy demonstrated the presence of numerous diverticula. There was no active bleeding, blood, or stigmata of hemorrhage seen on either the EGD or colonoscopy, however.  Mr. Vargas never had any recurrent bleeding during his hospitalization.

Based on the EGD and colonoscopy results, Medical Center gastroenterology staff believed that Mr. Vargas was at low risk of suffering rebleeding.

---

[1] Diverticula are small pouches that bulge outward through the colon, or large intestine.

The following morning, December 3, the Vargases were scheduled to return to their home in Florida via airplane.  Medical Center internal medicine physician Dr. Daniel Lotner evaluated Mr. Vargas in the early morning and had concerns regarding Mr. Vargas's blood counts.  After discussing the Vargases' planned air travel with Mr. Vargas, Dr. Lotner ordered repeat lab work.  After the lab tests returned and were no longer concerning, Dr. Lotner agreed to discharge Mr. Vargas from the hospital.  Within his discharge summary, Dr. Lotner documented that the Vargases had a flight to catch and "despite our concern for rebleed he insisted on leaving."

After his discharge from the Medical Center on December 3, Mr. and Mrs. Vargas traveled by air from Harrisburg to Philadelphia, where they connected on another flight to Jacksonville.  Mr. Vargas's condition was normal during the Harrisburg-to-Philadelphia flight.

During the flight from Philadelphia to Jacksonville, Mr. Vargas suffered a recurrence of his rectal bleeding.  He was allegedly assisted to the bathroom and, after entering, allegedly collapsed with the door opened.  The plane was diverted to Charlotte, North Carolina.

4

After the plane landed, Mr. and Mrs. Vargas were taken to a hospital in separate ambulances.  Mrs. Vargas learned at the hospital that her husband had passed away.

The Plaintiff claims that Medical Center staff prematurely discharged Mr. Vargas from the hospital without definitively identifying the source of his bleeding.  The Plaintiff claims that, but for this allegedly premature discharge, Mr. Vargas would have remained in the hospital and would have received prompt treatment for the recurrence of his bleeding.

The Medical Center denies that its staff were negligent.  In view of Mr. Vargas's presentation, evaluation with upper endoscopy and colonoscopy, the lack of any evidence of bleeding vessels or stigmata of hemorrhage on those evaluations, and the lack of any recurrence of Mr. Vargas's bleeding during his hospitalization, it was reasonable to assess Mr. Vargas as being at low risk for rebleeding.  Moreover, Medical Center staff explained the potential of a recurrence of his bleeding and Mr. Vargas nonetheless opted for discharge from the hospital.

## C.     Statement of Undisputed Facts

The Plaintiff and the Medical Center agree that a physician-patient relationship existed between Mr. Vargas and Medical Center staff, as reflected within his Milton S. Hershey Medical Center medical records.  The Plaintiff and the Medical Center further agree that Dr. Charles Davis and Dr. Daniel Lotner were employed by the Milton S. Hershey Medical Center at the time period in question and that Dr. Davis and Dr. Lotner participated in Mr. Vargas's care and treatment in the course and scope of their employment.

## D.     Brief Description of Damages

The Plaintiff seeks unliquidated compensatory damages under the Pennsylvania Survival and Wrongful Death Acts.

## E.     Witnesses

### 1.     Defense Witnesses

   a. Dr. Daniel Lotner: will testify as to issues, matters, and opinions within the scope of his care and treatment of Justino Vargas (including discussions with Mr. Vargas and his family), the medical records, and deposition testimony;

   b. Dr. Charles Dye: will testify as to issues, matters, and opinions within the scope of his care and treatment of Justino Vargas (including discussions with Mr. Vargas

and his family), the medical records, and deposition
testimony;

c. Dr. Simon Mucha: will testify as to issues, matters,
and opinions within the scope of his care and
treatment of Justino Vargas (including discussions
with Mr. Vargas and his family), the medical records,
and deposition testimony;

d. Dr. Amy Welch: will testify as to issues, matters, and
opinions within the scope of her care and treatment of
Justino Vargas (including discussions with Mr. Vargas
and his family), the medical records, and deposition
testimony;

e. Dr. Emmanuelle Williams: will testify as to issues,
matters, and opinions within the scope of her care and
treatment of Justino Vargas (including discussions
with Mr. Vargas and his family) and the medical
records;

f. Dr. Loren Laine, defense expert: will testify as to
issues of liability, causation, and damages consistent
with the opinions set forth within his expert report
(attached as Exhibit A) and his pretrial deposition
testimony;

g. Dr. Stephen Lagana, defense expert: will testify as to
issues of liability, causation, and damages consistent
with the opinions set forth within his expert report
dated March 12, 2018 (attached as Exhibit B) and his
pretrial deposition testimony;

h. Any custodian of records whose presence is necessary
to establish the authenticity of documents and/or to
fulfill the business records exception pursuant to
Fed.R.Evid. 803(6), to the extent Plaintiff either
objects to the admissibility of documents on these
bases or refuses to stipulate that the documents are
authentic and business records;

7

    i.  Defendant also reserves the right to call Joanna Vargas, Justin Vargas, Dr. Robert Thomas, any witness listed as potential witnesses by the Plaintiff, any individuals deposed in this matter, and any other witness necessary to provide rebuttal testimony.

### 2. *Plaintiff's Witnesses*

See Plaintiff's Pretrial Memo.

## F.  Summary of Testimony of Each Expert Witness

### 1. *Plaintiff's Expert Witnesses*

See Plaintiff's Pretrial Memo.

### 2. *Defense Expert Witnesses*

### a. *Dr. Loren Laine*

The Medical Center has produced an expert report authored by gastroenterology expert Dr. Loren Laine.  (A copy of Dr. Laine's written expert report together with his curriculum vitae are collectively attached as Exhibit A.)  Plaintiff's counsel is scheduled to conduct Dr. Laine's pretrial deposition on June 28, 2018.

Dr. Laine's opinion is that the care and treatment provided by Medical Center staff was reasonable and appropriate.  Dr. Laine opines that it was reasonable to conclude that the source of Mr. Vargas's bleeding upon his presentation to the Medical Center was either gastric ulcers or a bleeding diverticula.  In either event, it was reasonable after

performance of an upper endoscopy and colonoscopy to conclude that
Mr. Vargas was at low risk of a serious rebleeding event and to
discharge him from the hospital.  Dr. Laine further concludes that
traveling by airplane did not increase Mr. Vargas's risk of a rebleeding
event.  Last, Dr. Laine's opinion is that Medical Center staff
appropriately included Mr. Vargas as a participant in the decision
making process concerning the safety of discharge on December 3, 2014
and subsequently traveling via airplane later that day.

### b. *Dr. Stephen Lagana*

The Medical Center has produced an expert report authored by
gastroenterology pathologist Dr. Stephen Lagana.  (A copy of Dr.
Lagana's written expert report dated March 12, 2018 together with his
curriculum vitae are collectively attached as Exhibit B.)

Within his report, Dr. Lagana opines regarding the claimed cause
of Mr. Vargas's demise.  Based on his review of the pathology material,
Dr. Lagana concludes that Mr. Vargas did not have evidence of either
diverticulitis or a perforation site.  Dr. Lagana also indicates that there
is no evidence to support the observation that Mr. Vargas had blood
evident within his abdomen, as reported within the autopsy report.

Last, Dr. Lagana states that there are no guidelines concerning air travel following diverticular bleeding or a colonoscopy.

**G.** **Special Comment About Pleadings and Discovery**

None at this time.

**H.** **Summary of Legal Issues Involved and Legal Authorities Relied Upon**

Federal Courts sitting in diversity, as in this case, must apply the substantive law of the state whose law governs the action.  <u>See</u>, e.g., <u>Petrucelli v. Bohringer and Ratzinger</u>, 46 F.3d 1298, 1308 (3d Cir. 1995).  In this case, the burden of proof is on the Plaintiff to establish, by a preponderance of the evidence, Medical Center staff:  (1) did not possess and employ the required skill and knowledge or (2) did not exercise the care and judgment of a reasonable person in like cases, <u>and</u> that the injury complained of either (1) resulted from the failure on the part of Medical Center staff to possess and employ the required skill and knowledge or (2) resulted from their failure to exercise the care and judgment of a reasonable person in like circumstances.  <u>Collins v. Hand</u>, 431 Pa. 378, 246 A.2d 398, 401 (1968); <u>Donaldson v. Maffucci</u>, 397 Pa. 548, 156 A.2d 835, 838 (1959).

The Plaintiff must prove that each of the claimed injuries and damages were with reasonable certainty caused by the alleged negligence.  A mere possibility that the claimed injuries and damages could be related to the negligence at issue is not sufficient proof of causation.  <u>Gordon v. Trovato</u>, 234 Pa. Super. 279, 338 A.2d 653, 654, 657 (1975); <u>Rice v. Hill</u>, 315 Pa. 166, 172-73, 172 A. 289 (1934); <u>Lorch v. Eglin</u>, 369 Pa. 314, 321, 85 A.2d 841, 844 (1952); <u>Baccare v. Mennella</u>, 246 Pa. Super. 53, 369 A.2d 806, 807, 809 (1976); <u>American Air Filter Co., Inc. v. McNichol</u>, 527 F.2d 1297 (3rd. Cir. 1975).

The opinion of an expert is necessary to establish the standard of care required under the circumstances, that a deviation from said standard existed, and that the alleged injuries were proximately caused by the deviation from the standard of care.  Expert testimony is necessary to establish the causal connection between the injury and proven negligent conduct in those cases where the connection is not obvious, such as in this case.  <u>Brannan v. Lankenau Hospital</u>, 490 Pa. 588, 417 A.2d 196, 199 (1980); <u>Maliszewski v. Rendon</u>, 347 Pa.Super. 109, 542 A.2d 170, 172 (1988), <u>appeal denied</u>, 526 Pa. 617, 554 A.2d 510

(1988).  (Defendants' Proposed Jury Instructions are attached hereto as Exhibit C.)

**I.**   **Stipulations Desired**

None at this time.

**J.**   **Estimated Number of Trial Days**

It is estimated that the trial of this matter will take approximately 5 days.

**K.**   **Other Pertinent Matters**

Defendants respectfully request that, to the extent possible, the scheduling of witnesses, which include physicians, nurses and health care providers, be done in a manner which is least disruptive of their professional obligations.  In this regard, it is respectfully requested that non-party witnesses be provided with as much notice as possible concerning the date and time of their testimony.

**L.**   **Exhibits**

The list of pre-numbered defense exhibits is attached hereto as Exhibit D.

**M.**   **Special Verdict Questions**

Defendants' proposed Verdict Slip is attached hereto as Exhibit E.

### N. Statement Concerning Notification of Individuals With Settlement Authority Pursuant to Local Rule 16.2

Defense counsel hereby certifies that the appropriate individual with settlement authority, Debra Verne, Senior Director, System Claims, Penn State Health, has been notified of the requirements of U.S. District Court - Middle District Local Rule 16.2.

### O. Certification of Concurrence with Counsel Concerning Depositions and Videotapes Pursuant to Local Rule 30.10

Counsel have not yet determined which depositions will be used at trial.  Once such a determination is made, counsel will comply with the provisions of Local Rule 30.10.

Respectfully submitted,

Dated: May 25, 2018                         By:  /s Jonathan B. Stepanian
                                                 Jonathan B. Stepanian, Esquire
                                                 Attorney I.D. 89147
                                                 jbstepanian@mqblaw.com
                                                 McQuaide Blasko Law Offices
                                                 1249 Cocoa Avenue, Suite 210
                                                 Hershey, PA  17033
                                                 717-533-4444