# Exhibit "B"

Case 1:16-cv-01657-YK   Document 36-2   Filed 05/25/18   Page 2 of 3

**NEIL L. JULIE, M.D.**
15225 Shady Grove Road # 103
Rockville, MD  20850

---

1/17/17

James E. Beasley, Jr., M.D., J.D.
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA  19107-4997

Re:  Vargas

Dear Dr. Beasley:

 I am a physician currently licensed to practice in the State of Maryland. I am Board Certified in both Internal Medicine and Gastroenterology. Attached hereto is a copy of my current curriculum vitae.

I have reviewed the following medical records regarding Justino Vargas.

1. Penn State Hershey Medical Center
2. Colonoscopy report
3. EGD report
4. North Carolina Autopsy Report

Mr. Vargas, a 68 year old male, had two episodes of acute rectal bleeding and was taken by ambulance to Penn State Hershey Medical Center ER on December 2, 2015. Per the ER records, he was found to be hypotensive, tachycardic, and also had a gap acidosis and acute renal injury. He was hydrated in the ER with 2 liters of fluid. He was admitted to Hershey's internal medicine service for acute blood loss and anemia, and a gastroenterologist was consulted. While there an EGD, CT and colonoscopy were performed.  The GI reports show that clean-based gastric ulcers were found as was diverticular disease, although no active bleeding site was found during these procedures. The final diagnosis at discharge seemed to suggest that his bleeding was secondary to gastric ulcers caused by NSAID use.  Records state that Mr. Vargas should avoid NSAID use going forward. Mr. Vargas was thought to be stable and he was discharged with typical discharge instructions.

The medical records state within the "Hospital Course" section, "The pt had a flight to catch the following day and despite our concern for re-bleed he insisted on leaving. He was discharged and did not leave AMA."

Despite the above-mentioned "concern of re-bleed" there is no record that Mr. Vargas was told that the flight and its associated lack of on-board access to emergency care posed a very specific and significant risk if he were to suffer a re-bleed.

It is my professional opinion that the Penn State Hershey Medical Center did not meet the standard of care in their treatment of Mr. Vargas. The patient had reported two profuse GI bleeds with red blood per rectum that resulted in hypotension, tachycardia and that had led to acute anemia. In addition, since the GI procedures did not render a clear diagnosis, Mr. Vargas should have been kept in the hospital for a period of several days for observation. If Mr. Vargas insisted on leaving then the Medical Center had an obligation to explain to Mr. Vargas, especially since they were aware of his plans to fly, that his risks were so serious that he could only leave with the understanding that it must be Against Medical Advice. The autopsy findings confirm that gastric ulcers were a complete misdiagnosis. The absence of stigmata of recent hemorrhage was overlooked evidence that informed the treaters that bleeding gastric ulcer was an incorrect diagnosis. Regardless, had the hospital informed Mr. Vargas of these risks and kept him in the hospital, he would not have been in a position to hemorrhage without available treatment, and the bleed would have been diagnosed and treated. The failure to comply with the standard of care increased the risk that Mr. Vargas would have suffered the catastrophic bleed and die from it.

My opinions are stated to a reasonable degree of medical certainty. However, these opinions may be modified based on any evidence or deposition testimony that may be forthcoming.

Sincerely,

*[signature]*

Neil L. Julie, M.D.